## J. ADDISON CRAIN, Adm r.,
### *v.*
## SARAH A. WRIGHT.

1. EVIDENCE. The declarations of a husband, that money paid on the purchase of land belonged to his wife, and that he wished the contract to inure to her benefit, are admissible in evidence. Like all such declarations, they are not conclusive, but may be disproved by direct or circumstantial evidence.

2. NEW TRIALS. Where the evidence is conflicting it is the duty of the jury to reconcile it as far as it can reasonably be done ; and so far as it is irreconcilable, to reject such as they may believe, from all the circumstances, was the result of mistake or misapprehension, or from other causes, is not reliable, and to give credit to such as they believe to be true.

3. Unless the verdict of a jury is manifestly against the evidence, it will not be disturbed. This is especially so where two juries have found the same way upon the same state of facts.

APPEAL from the Circuit Court of Stephenson county ; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was a claim filed in the County Court of Stephenson county, by Sarah A. Wright, against the estate of Chancellor Martin, deceased. The claim was allowed. The administrator appealed to the Circuit Court. The case was tried by a jury, and verdict rendered in favor of claimant for $500. A motion for a new trial was overruled, and judgment entered, that said

sum be paid in due course of administration, upon surrender by the claimant to the legal representatives of the deceased, the possession of a tract of land described, within six weeks.

The administrator brought the case to this court by appeal.

The facts are fully stated in the opinion.

Mr. J. A. CRAIN, for the appellant.

Mr. U. D. MEACHAM, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee filed a claim in the probate court of Stephenson county, against the estate of Chancellor Martin, of which appellant was the administrator. A trial was had in that court, and the claim was allowed, from which appellant appealed to the Circuit Court. Two trials were subsequently had in the latter court, both resulting in favor of the appellee. The cause is now brought by appeal to this court, and a reversal is urged on several grounds. The judgment entered on the verdict of the jury is, that the sum found by the jury be paid to appellee in due course of administration, upon her surrendering to the legal representatives of Martin the possession of the N. W. ¼, S. W. ¼, Sec. 14, T. 28, N. 4 E. within six weeks.

The witness Kean testifies that he was present when Wright, the husband of appellee, and Martin, had a conversation in reference to the land; that it was then agreed that Martin should pay $500 into Mitchell & Co.'s bank, to the credit of appellee, within one year from that time, to be paid to her upon her surrendering the land to Martin within six weeks after being notified that the money was so deposited. It seems, from the evidence, that this land belonged to a brother of Martin, who had, before leaving for California, given

Martin a power of attorney to sell it, and that he had contracted it to Wright for the sum of $355, to be paid in two instalments. A portion of the money had been paid on the contract. It is claimed, that learning that the brother of Martin had died, the contract was rescinded, and Wright having gone into possession and made improvements, it was agreed that Martin should pay his wife $500, and she should surrender possession of the premises to Martin. Appellee insists upon the performance of this new agreement, whilst appellant denies that any such contract was ever made.

It is urged as a ground of reversal, that the court erred in admitting in evidence the declarations of Wright, that the money which he had paid on the contract belonged to appellee. We are warranted in the inference from Townsend's evidence, that appellee was the administratrix of her deceased husband's estate, and if so, it could not matter to the estate of Martin whether she recovered in her individual or representative capacity. That would be a question proper to be determined in her settlement of her administration. But we are clearly of the opinion, as to strangers, if not as to privies, that the declarations of a husband, that money paid on the purchase of land, belonged to his wife, and he wished the contract to inure to to her benefit, are admissible. Like all such declarations, they are not conclusive, but may be proved to be untrue, either by positive or circumstantial evidence. The court, therefore, committed no error in admitting this evidence. This disposes of the instruction on this evidence, refused by the court, upon which error has been assigned.

We do not see that the evidence of Kean is so far variant from the account filed as to have required its exclusion from the jury. It was substantially the same as the claim set up in the account upon which this proceeding is based. And so far as we can see, the letters of administration granted to appellee on her husband's estate, were pertinent to no issue in the case, and the court committed no error in rejecting them. It would

have been hearsay evidence to have permitted Turner to testify to what the person, who he supposed was Wright, said in reference to having employed Kean to attend to the case. Nor do we see that the time fixed for the adjustment of claims against Martin's estate, was material to the merits of this case. It could only have been important in view of the recovery of costs, and that was not a question for the jury. There was, therefore, no error in excluding that evidence.

The remaining question is, whether the evidence sustains the verdict. It is certainly conflicting to some extent, and, viewed in any light in which it can be presented, it is not free from doubt. It is apparently conflicting in some particulars, and in others, seems to be irreconcilable. Kean was called as a witness by appellee, and testified to a conversation that, he says, occurred between Martin and Wright, in February, 1864, and just as Wright was leaving for the army. He says he and Wright went to Martin with the balance of the money on the contract; that upon being spoken to in reference to the matter, Martin said he doubted whether he could convey the land, as he had heard his brother was dead; that by consent of the parties, the contract was then rescinded. Wright claimed to have made valuable improvements on the land, and asked $600 or $700 to rescind; Martin offered $400, and $500 was agreed upon, as Kean testified. He also swears that Wright said it was his wife's money which had been paid, and he wanted her to have the money. He says this occurred about the 20th or 21st of February, 1864, on the eve of Wright's entering the army. Both Martin and Wright died before the year within which the money was to be paid had expired, and it was not paid into the bank or otherwise.

Turner, on the other hand, thinks that in the month of April or May, following, Wright came and desired him to institute legal proceedings to obtain the land; and says that the person represented himself as being Wright, and afterwards spoke of having employed Kean to prosecute the claim

against the estate, and desired him to assist in its management. Townsend states that he lives within three miles of Wright, and the last he ever saw of him was at Nashville, Tennessee, on the 15th of March, 1864.

He states that he saw Turner, in reference to the claim, in April or May, 1864, and speaks of some of the occurrences to which Turner refers; that Wright, before leaving, had spoken to him to attend to the matter and arrange it with Martin, and informed him that he had left the papers and money with his wife, and requested him to call on her and get them, which he did. He states that when she gave him the papers and money, she said nothing about the new agreement.

Kean swears he never saw Wright after the new arrangement was made in February, and that Wright took the papers with him, and he saw nothing of them afterwards, until they were placed in his hands by appellee. In this condition of the evidence, it was for the jury, under proper instructions, to reconcile, as far as that could be reasonably done, and so far as it was reconcilable, to reject such as they, from all the circumstances, believed was the result of mistake or misapprehension, or from other causes, was not reliable, and to give credit to such as they believed to be true. They have passed upon it under such instructions, and although it might be that we should have arrived at a different conclusion, still we cannot say that it fails to sustain their finding. They saw the witnesses, and from their manner, their intelligence and opportunities of being informed, could determine the weight their evidence should receive. And unless it is clear that the jury have mistaken the weight of the evidence, and their verdict is manifestly against it, this court will not interpose to set aside the verdict and reverse the judgment rendered upon it. Especially so, where we see that three juries have found the same way, and we must presume, upon substantially the same evidence.

There is no force in the objection urged to the form of the judgment, in the court below. It appears that appellee consented to take the judgment, payable only on the surrender of the property to the legal representatives of the defendants, intestate. The judgment was rendered upon these terms, and to be paid in due course of administration. In this no error is perceived. The heirs of Martin, or whoever owned the land would obtain possession before the judgment could be enforced, as that was a condition to its payment, and they could, therefore, run no risk of loss, or of incurring expense in procuring possession of the lot.

. The judgment of the court below must be affirmed.

*Judgment affirmed.*