# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## SECOND GRAND DIVISION.

### JANUARY TERM, 1870.

THE TOLEDO, WABASH & WESTERN RAILWAY CO.

*v.*

JOHN W. BADDELEY.

1. DEPOSITIONS—*notary public.* In this State depositions in all cases may be taken before a notary public.

2. NOTICE *to take depositions—as to the residence of the witnesses.* A notice given by the plaintiff to take his own deposition, to be read in a suit at law commenced in Champaign county, but then pending in Ford county, had the venue of the latter county, and notified the defendant that the deposition would be taken at the residence of the plaintiff, at a place in Champaign county. On the objection that the notice did not show the witness was a resident of a different county from that in which the suit was pending, it was *held,* as the action was brought in Champaign county, it was a fair inference that was the county of the plaintiff's residence, and it was a county different from the one in which the suit was pending.

3. Practice—*time of objecting to depositions.* Objections to depositions should be taken and disposed of before the trial of the cause, so that, if defective, the party taking them may have an opportunity to remedy the defects, and for such purpose to ask a continuance.

4. Measure of damages—*in an action for injuries resulting from negligence of defendant.* In an action against a railroad company for injuries to the plaintiff, a passenger on a train of the defendants, occasioned by the negligence of the company, the jury may consider, in estimating the damages, whether the mental faculties of the plaintiff were impaired by the accident; and this is a legitimate subject of inquiry without reference to the question whether the act was wilfully done.

5. And in such case it is competent for the physician who attended upon the plaintiff on the occasion, to testify on behalf of the plaintiff as to his opinion in respect to the effect of the injuries received by the plaintiff upon his future condition.

6. Negligence — *instruction.* In an action to recover for injuries received by reason of the negligence of the defendant, in a case where the latter should exercise the highest degree of care, the jury may properly be instructed that the defendant should have exercised extraordinary care, as that does not differ from the phrase, greatest care—utmost care—highest degree of care.

7. Carriers of passengers—*proper time to leave a railroad train.* Railroad companies must afford a reasonable time to passengers, whether young or old, to leave the cars in safety, and if the time tables do not allow sufficient time for this purpose, and an injury is thereby occasioned, the company will be liable therefor. But the age or decrepitude of a passenger will not determine the time of the stoppage of a train on its arrival at a station.

Writ of Error to the Circuit Court of Ford county; the Hon. A. J. Gallagher, Judge, presiding.

The opinion states the case.

Mr. A. E. Harmon and Mr. Wm. E. Nelson, for the plaintiffs in error.

Messrs. Langley & Wolfe, for the defendant in error.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action on the case, against a railroad company, to recover damages for an injury to the plaintiff, a passenger

on the train, occasioned by the negligence of the company, and a verdict for plaintiff of $10,000, one-half of which was remitted by the plaintiff, and judgment entered for $5000.

The defendants bring the record here, by writ of error, assigning various errors.

The first relates to the refusal of the court to exclude the deposition of the plaintiff, for the reason, it was taken before a notary public. This is not a valid objection to the deposition, inasmuch as, by the third section of Ch. 76, entitled, "oaths and affirmations," express power is given notaries public, "to take affidavits and depositions concerning any matter or thing, process or proceeding, depending or to be commenced in any court or before any justice of the peace, or on any occasion wherein such affidavits or depositions are authorized or required by law to be taken." R. S. 393.

That this power is plenary, so far as notaries public are concerned, can not be questioned, and the practice has been uniform and unchallenged throughout the State, to take depositions before such an officer.

Another reason for excluding this deposition was urged, that the notice to take it did not show that the witness was a resident of a different county from that in which the court was held.

The notice, as appears by the record, has the venue, Ford county, that being the county in which the suit was pending and to be tried, and notifies defendants that the deposition will be taken at the residence of the plaintiff, in Champaign City, Illinois, on a day named. This is a sufficient compliance with the statute, as it gives "time and place." As the action was brought in Champaign county, the inference would be fair, that was the county of plaintiff's residence, and it is a county different from the one where the suit was pending.

The objections to particular interrogatories, and the answers thereto, were properly disposed of by the court; and here we may say, it is not the proper practice to make objections to depositions on the trial of a cause, as these appear to have been

made. They should be made and disposed of before the trial, in order, if defective, the party taking them may have an opportunity to remedy the objections, and, for such purpose, ask a continuance.

As to the merits of the case, the testimony is very conflicting, indeed, on the strength of which, the jury would have been warranted in coming to a conclusion against the plaintiff, and, had they done so, the court would hardly be justified in setting the verdict aside as being against the weight of evidence. There are numerous cases in this court to that effect.

As this court said in *Crain* v. *Wright*, 46 Ill. 107, and in many other cases, where the evidence is conflicting, it is the duty of the jury to reconcile it so far as it can reasonably be done, and so far as it is irreconcilable to reject such as they may believe, from all the circumstances, was the result of mistake or misapprehension, or from other causes is not reliable, and to give credit to such as they believe to be true. Juries see the witnesses, and from their manner, their intelligence and opportunities of being informed, can determine the weight their evidence should receive, and unless it is clear the jury have mistaken the weight of the evidence, and their verdict is manifestly against it, this court will not interpose to set aside a verdict and reverse the judgment rendered upon it. *Voltz et al.* v. *Stephani et al.* ib. 54, is to the same effect, and it has long been the settled doctrine of this court.

We can not say, in this case, the jury have mistaken the weight of the evidence, and consequently can not disturb the verdict.

An objection was made by defendants on the trial, to a question to this effect, put to the attending physician of plaintiff : Have these injuries affected the mind of the plaintiff?"

It is insisted by defendants, that, as the act was not willfully done, the mere mental suffering resulting from it forms no part of the actionable injury, citing a note in 2 Greenleaf on Ev. sec. 267. The authority referred to by the author of that treatise is *Flemington* v. *Smithers*, 2 Car. and Payne, 292. In

the text, the author says : Injuries to the person or to the reputation, consist in the pain inflicted, whether bodily or *mental,* and in the expenses and loss of property which they occasion; and the jury, in estimating damages, may consider, not only the direct expenses incurred by the plaintiff, but the loss of his time, his bodily suffering, and if the injury was willful, his mental agony also.

It will be perceived the question put has no reference to this effect upon the mind. Mental suffering, such as a person is supposed to undergo when writhing under the infliction of a willful injury, is not involved in the question. The answer of the witness shows he did not so understand it, for he says : "Yes, sir, so much so, he is almost incapacitated from doing anything at all; at this time he can not recollect anything more than ten minutes; at times he loses his mind entirely." The effort was to show by this witness the shock to plaintiff's system by the fall, and consequent amputation of his arm, was so great as to deprive him, in a great measure, of mental power, and this was a legitimate subject of inquiry. In the opinion of this witness, the injury was permanent, and of the most serious and distressing character.

This question was followed by another, to which objection was made. It was this : "What will be the effect of these injuries on his future condition?" The answer was, "I think it will result in death before many months; he may live one year."

Defendants insist that no man, physician or otherwise, can tell what the future condition of an injured person will be. This may be true, and this physician did not pretend to say what his future condition would certainly be — he merely expressed an opinion on the facts, on the medical knowledge he had, and of physiology. He was a physician of years' practice, and must have been quite ignorant if he could not form an opinion on the probable effect of such injuries on the human system. It may be he was mistaken, but his opinion on the subject was proper for the consideration of the jury.

All the evidence of this character objected to by defendants was admissible under the declaration, to the benefit of which the plaintiff was entitled. 1 Ch. Pl. 398 ; *Frink et al.* v. *Schroyer,* 18 Ill. 416 ; *Slater* v. *Rink,* ib. 527, and many other cases to the same effect.

An objection is made to the instructions given for the plaintiff, especially the second, in which the jury are told these companies must exercise extraordinary care. It is said the court did not explain to the jury what was extraordinary care, leaving it to each juror to put his own construction on the phrase. We think this objection is rather hypercritical. Had the court used the phrase, the strictest care, or any other phrase implying a care more than ordinary, no one would think the court should give an explanation of it. So, where the phrase, extraordinary care, was used, the jury could not fail to see that something more than ordinary care was required, something extra, beyond that degree. It does not differ from the phrase, greatest care, utmost care, the highest degree of care, and so the jury would understand it.

The fourth instruction given for plaintiff is objected to. It was this :

" The jury are further instructed, that a passenger is entitled to a reasonable time to leave the car in which he has been riding, when a train is stopped for that purpose, and what will constitute a reasonable time, depends upon the age and physical condition of the passenger, as well as the time, place, and facilities for getting off the train, which the jury are at liberty to consider, in determining whether or not such reasonable time has been allowed."

If the instruction was designed to be understood that the age and decrepitude of a passenger must determine the time of the stoppage of a train on its arrival at a station, it would be objectionable, but it is not to be so understood. Its extent is, that railroad companies must afford a reasonable time to passengers,

whether young or old, to leave the cars in safety, and if the time tables do not allow sufficient time for this purpose, and an injury is thereby occasioned, the company would be liable therefor.

The eighth instruction given for the plaintiff is objected to, on the ground that the mental suffering of the plaintiff was not a proper element to enter into the consideration of the jury, the injury not having been willful.

There was no evidence before the jury of mental suffering by the plaintiff. The proof was, that his mind was almost totally destroyed, and it must have been in view of such a condition the jury received the instruction. They could not have been misled by the language in which the instruction was couched. And, as given, it was more favorable to the defendants than if the attention of the jury had been called to the fact of an entire breaking up of that most important faculty, on which human happiness so much depends.

There is no argument upon the point that the damages are excessive, and we forbear touching that subject.

Perceiving no error in the record which would justify us in reversing the judgment, the same must be affirmed.

*Judgment affirmed.*