Horace Benjamin, Respondent, v. Henry L. Rogers, as Executor, etc., Appellant.

A transferee of negotiable paper who takes it knowing that it was executed by an accommodation maker, and was transferred in violation of conditions or limitations imposed by such maker, cannot maintain an action thereon against him.

Such maker has a right to determine for himself what use shall be made of it; he may impose seemingly immaterial conditions limiting its use, and no one can get title as against him, who takes it with full knowledge, in violation of the conditions.

In an action upon a joint and several promissory note, it appeared that it was signed by plaintiff's testator as surety, solely for the accommodation of one of the other makers and to enable him to borrow the amount thereof of P., the payee; the latter having refused to make the loan, C. applied to plaintiff, who took the note with full knowledge of all the circumstances, paying part in cash and applying the balance in paying a pre-existing indebtedness of C. to him. *Held*, that as to plaintiff's testator the note had no inception and plaintiff was not entitled to recover.

*Jackson* v. *F. N. Bank* (42 N. J. L. 177); *Powell* v. *Waters* (17 Johns. 177); *Bank of Chenango* v. *Hyde* (4 Cow. 567); *Utica Bank* v. *Ganson* (10 Wend. 315); *Essex Co. Bank* v. *Russell* (29 N. Y. 673); *Grocers' Bank* v. *Penfield* (69 id. 502); *Clinton Bank* v. *Ayers* (16 Ohio, 283), distinguished.

While the mere independent declarations of a prior holder of a chose in action cannot be given in evidence to affect the title or the rights of a subsequent holder, such declarations made at the time the chose in action was negotiated, to the person who is seeking to enforce it, may be proved as part of the *res gestæ* and may qualify the latter's title.

*It seems*, however, they are not conclusive and may be controverted.

(Submitted March 3, 1891; decided March 10, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1890, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*M. M. Waters* for appellant. The note in the hands of Leman Calkins the principal maker, with Crandall's name on it as surety, was not valid as a note, but it carried on its face

notice that it had never been negotiated and that neither Nellie Petit nor bearer had ever held it, and that it never had had an inception. (*Central Bank* v. *Hummett*, 50 N . Y. 158 ; *Merrick* v. *McCullen*, 20 Johns. 288.) The transaction with Benjamin gave the note an inception as to the single promise of Calkins. (*Brownell* v. *Winnie*, 29 N. Y. 129.) Crandall was to be a surety as between himself and the other two signers of the note whenever the note should have an inception, and the note was notice of this fact, as the word "surety" appears on the note. (*Calvo* v. *Davis*, 8 Hun, 222.) The provision in the agreement between Calkins (one of the principal debtors) and Benjamin (the plaintiff) under which he acquired possession of the paper, whereby he was to keep the knowledge of the transaction from Crandall and Hathaway, and the actual execution of that agreement by Benjamin from 1880 to January 4, 1886, according to the express requirement of Calkins, holding Benjamin to the agreement, operated, as matter of law, to discharge Crandall from all obligations on the note. (*Paine* v. *Jones*, 76 N. Y. 274 ; *Calvo* v. *Davis*, 8 Hun, 222 ; 73 N. Y. 211.) The transaction between Calkins and Benjamin in 1880, was neither a purchase and sale of the note, nor a lawful negotiation of the paper, giving the note an inception. (*C. Bank* v. *Hemmitt*, 50 N. Y. 158.) The agreement to delay, notifying and suing Hathaway was upon valid consideration, and, therefore, Crandall was discharged by the delay and concealment. (*Spencer* v. *Spencer*, 95 N. Y. 353 ; *Murray* v. *Marshall*, 94 id. 611.) The note was void as one whereby more than six per cent per annum was received for the loan, use and forbearance of the money paid and advanced, if the jury so found. (*Eastman* v. *Shaw*, 65 N. Y. 522 ; *Hall* v. *Wilson*, 16 Barb. 548 ; *Martin* v. *McCullen*, 20 Johns. 288.) The condition imposed by Calkins upon the delivery of the note to plaintiff, that the delivery should be kept a secret from Crandall and Hathaway and that the note would not remain in Benjamin's hands over sixty days and that he should then have it to raise the money from Nellie Petit, was one which Calkins had the right to impose so far as his own obli-

gation was concerned and so far as to prevent a delivery for either Hathaway or Crandall, and the condition imposed was one properly proved by parol on the trial. (*Benton* v. *Martin,* 52 N. Y. 570; *Juliand* v. *Chaffee,* 92 id. 529.) The note carried on its face notice that Calkins was the maker, Crandall the surety; that it had not yet had an inception; that Calkins was the mere agent of the surety, with only authority to deliver for the surety, according to the surety's intention, and not to make a secret delivery in fraud of the surety's rights. (*C. Bank* v. *Hemmett,* 50 N. Y. 158; *Merrick* v. *McCutlen,* 20 Johns. 288.) If a delivery for Hathaway and Crandall was intended, then the special purpose for which the note was made and to which the right of the agent to use the note was expressly limited, the promise to keep the transaction secret and the fulfillment of that promise for six years, constituted a diversion of the note, which renders it void because the delivery was then on Calkins' individual deal. (*Denniston* v. *Bacon,* 10 Johns. 198.) The plaintiff cannot recover on this note unless he shows himself to be a *bona fide* holder. (*Comstock* v. *Hier,* 73 N. Y. 273; *Ives* v. *Jacobs,* 21 Abb. [N. C.] 156.) The evidence of Rogers, Suggett and Malenberg as to statements made by the plaintiff wherein he recited the contract made between him and Calkins was competent. (*Von Sachs* v. *Kretz,* 72 N. Y. 548.) The declarations stand uncontradicted. If plaintiff desired to contradict them, he should have taken the stand. (*Ives* v. *Jacobs,* 21 Abb. [N. C.] 156, 157.)

*L. B. Kern* for respondent. The " short bar " of six months limitation is not applicable to this case. (Code Civ. Pro. § 1322; Laws of 1882, chap. 399, § 2.) To constitute usury, a corrupt and usurious agreement must be proved, and this cannot be predicated of a case, where it is obvious the excess or omission to compute the interest was the result of accident, inadvertence or mistake. (*Marvine* v. *Hymers,* 12 N. Y. 223, 231; *Bevier* v. *Covell,* 87 id. 50; *N. Y. F. Ins. Co.* v. *Sturges,* 2 Cow. 664; 4 Abb. Ct. App. Dec. 235.) The declarations of

Calkins were clearly incompetent. Benjamin was a purchaser of the note for value before due, from one of the makers who is not a party to the action, and Calkins' declarations before he parted with his interest, and from whom the plaintiff derived title, are not competent. ( *Von Sachs* v. *Kretz,* 72 N. Y. 548; *Paige* v. *Cargwin,* 7 Hill, 361; *Booth* v. *Swezcy,* 8 N. Y. 276; *Jermain* v. *Dennison,* 6 id. 276; *Towsley* v. *Barry,* 16 id. 497; *Brisban* v. *Pratt,* 4 Den. 63; *Greene* v. *Given,* 33 N. Y. 369.) The admissions of Benjamin as testified to by Rogers, Suggett and Malenberg, wholly fail to establish a fraudulent diversion of the note; but on the contrary show that the note has effected the substantial purpose for which it was designed by the parties thereto. ( *G. Bank* v. *Penfield,* 69 N. Y. 502; *C. N. Bank* v. *Townsend,* 87 id. 8; *Wheeler* v. *Allen,* 59 How. Pr. 118; *Bank of Chenango* v. *Hyde,* 4 Cow. 567, 573; 1 Abb. Ct. App. Dec. 559; 1 Abb. Pr. 237; *Powell* v. *Waters,* 17 Johns. 176; *Ayers* v. *Doying,* 42 Hun, 632.) The fact that the complaint alleged the delivery of the note to the payee is immaterial. ( *Salisbury* v. *Howe,* 87 N. Y. 128; *Coe* v. *Raymond,* 89 id. 613; Code Civ. Pro. §§ 721, 723, 1207.) The trial court did not err in directing a verdict for the plaintiff. ( *Appleby* v. *A. F. Ins. Co.,* 54 N. Y. 253, 260; *Dwight* v. *G. Ins. Co.,* 103 id. 343.)

Earl, J. This action was commenced about the 1st of December, 1886, to recover upon a promissory note, of which the following is a copy:

" $4,000. Jointly and severally we promise to pay Nellie Petit, or bearer, $4,000, with use one year from date, value received.

" Dated *January 5th,* 1880.

" LEMAN CALKINS.

"CALVIN L. HATHAWAY,

" HIRAM CRANDALL,

"As surety."

The note was made by Calkins as principal, and the other two makers simply signed it for his accommodation. Crandall

died in August, 1881, and Hathaway in 1885, and it is infer-able that Calkins was pecuniarily irresponsible for some time before the plaintiff commenced this action. The note was made and signed by the accommodation makers to enable Calkins to borrow $4,000 of Nellie Petit, the payee therein named. She lived at Syracuse, and Calkins took the note to her, and she rejected it and refused to loan any money upon it. Two or three days after the date of the note, he went with it to the plaintiff and told him that he had a note for $4,000, which was made for the special purpose of borrowing $4,000 from Nellie Petit of Syracuse, and that that arrange-ment had fallen through, he having seen her and she having refused to take the note. He then said: "Benjamin, won't you take the note?" and Benjamin said: "I haven't got as much money as that, but if you will take these past-due notes which I hold against you, I will let you have part money and turn out the rest on those notes." Calkins then said: "Ben-jamin, neither Crandall nor Hathaway know anything about this, and I have no right to use the note in that way. It was got up for the special purpose of raising $4,000 of Nellie Petit, and I have no right to use it, and if I let it go on that consideration, I will take it up in sixty days myself, or I will get Nellie Petit to take it again, and neither Crandall nor Hathaway will know anything about it." The plaintiff then took the note and advanced thereon about $2,000 in cash and surrendered to Calkins his own past-due notes for the balance. The money advanced and the notes surrendered amounted to just $4,000, and it was arranged between the plaintiff and Calkins at the time he took the note that he should conceal the ownership thereof from Crandall and Hathaway on the promise by Calkins that he would take it up in sixty days, or get Nellie Petit to take it. The plaintiff held the note without receiving any interest thereon and without ever disclosing to Crandall or Hathaway or Crandall's executor that he held it. The note was for the first time brought to the knowledge of the defendant by the plaintiff on the 4th day of January, 1886, when he demanded the payment thereof.

The facts as to what took place when the plaintiff took the note were undisputed. They were proved by the plaintiff's admissions made in the presence of three persons who were called as witnesses for the defendant; and at the close of the evidence the trial judge directed a verdict for the plaintiff for the full amount of the note and the interest thereon, and refused to submit the facts to the jury upon the request of defendant's counsel.

One of the defenses set up in the answer is the diversion of the note from the purpose for which it was made, and we think that defense ought to have prevailed. Crandall signed the note for the accommodation of Calkins, and he appears on the face of the paper to be a mere surety. There is no claim that he had any benefit whatever from the note or that his relation thereto was different from what it appears to be on the face thereof. There can be no doubt that if the plaintiff had taken this note without any notice of the special purpose for which it was made, he would have been a *bona fide* holder for value in such a sense that he could recover thereon. But an accommodation maker of a note, or one who becomes surety upon a note, has a right to determine for himself what use shall be made of the note which he signs. He may impose material or immaterial conditions and terms, and no person, as against him, can get title to the note who takes it with full knowledge, in violation of the terms and conditions imposed upon it by him. Here the plaintiff was informed that Calkins had no right, as against the accommodation makers, to negotiate this note to him, and that it was made for the special purpose of borrowing money from the payee therein named. It cannot be said that this limitation was entirely immaterial even. Calkins was a business man, and Crandall may have been willing to sign this note to enable him to raise money to be used in his business, while unwilling to sign it if it was to be used to pay an antecedent debt. There may have been something in his relations with Miss Petit that made it more desirable to him that she should hold the note rather than some other person. He is long since dead, and cannot explain

why it was that he was willing to sign the note for the special
purpose named, and for no other purpos?. Suffice it to say
that he did make it for that purpose, and so the plaintiff was
notified at the time he took it. As to him, therefore, the note
never had any inception, and there can be no recovery against
his executor; and we believe that no authority can be found,
either in this country or in England, where it has been held
that a plaintiff can recover under such circumstances. The
authorities cited by the General Term and by the counsel for
the plaintiff are cases where paper was diverted and the
person to whom it was negotiated had no knowledge of the
diversion. We have examined all these authorities and many
others, and none of them are applicable to the precise state of
facts existing here.

We will notice a few of the authorities which appear to lean
most strongly in favor of the plaintiff's contention. In *Jack-
son* v. *First Natl. Bank* (42 N. J. L. 177), an accommodation
note was given with the understanding that the payee was to
deposit it temporarily as collateral security for a loan to be
made to him; and instead of obtaining a new loan and giving
the note to the lender as collateral, he deposited it with a bank
as security for moneys already owing by him to that institution;
and it was held that this was not a misappropriation, the accom-
modation paper effecting the substantial purpose for which it
was designed although the result was not produced in the pre-
cise mode contemplated, and that in order to constitute a mis-
appropriation of this kind of paper, the misuse must be tainted
with fraud. There the bank had no notice whatever of the mis-
appropriation of the paper. In *Powell* v. *Waters* (17 Johns
177), a note was made by Wood, and the defendant indorsed
the same as an accommodation indorser. The note was made
and indorsed for the purpose of being offered for discount at
a bank for the accommodation of Wood. It was presented for
that purpose and discount refused. It was then negotiated to
J. & T. Powell & Co., who advanced the money thereon and
who at the time were informed of the special purpose for which
the note was made. Afterwards the note in suit was made and

indorsed by the defendant for the purpose of taking up the former note (of which Wood had had the exclusive benefit) and it was used for that purpose, but the defendant did not know at the time he indorsed it that the former note had been negotiated to Powell & Co. He indorsed the note in suit, however, and delivered it to Wood without giving any instructions or directions in what manner it was to be negotiated, and nothing was said upon the subject, but he well understood it was to be used to take up the original note, and it was used for that purpose. The plaintiff had no notice or knowledge of any limitation or condition imposed upon the last note by the defendant, and none was imposed further than above stated. It was with reference to this state of facts that the judge writing the opinion, said : "The note in question was a renewal one which had been drawn by Wood and indorsed by the defendant. The first note was intended to be discounted at the Newburgh bank, but was discounted by the plaintiffs ; and it appeared by the testimony of Smith, an indorser of the note, subsequent to the defendant's indorsement, that the present note was delivered to him by Wood, indorsed by the defendant, without any directions or instructions from either in what manner he was to negotiate it, though it was well understood by Wood and the defendant that with the avails he was to take up the original note. * * * The first note was made and indorsed to raise money on, and it was entirely immaterial whether it was discounted at the Bank of Newburgh, or elsewhere. It did not alter or increase the responsibility of the indorser. The money to be raised was intended to be for the benefit of Wood, and he did receive the money for which the first note was discounted. If the plaintiffs knew when they received the note that it was intended to be discounted at the Bank of Newburgh, and had been refused, it would not affect them or establish any fraud."

In *Bank of Chenango* v. *Hyde* (4 Cow. 567), H., J. & W drew a promissory note to be discounted at the Chenango bank and payable to it. On the bank declining to discount it, B., an attorney at law, at the request of H., advanced him the

money, and it was agreed between them that the note should be left at the bank, as the agent or trustee of B., for his security. B. afterwards brought an action in the name of the bank against all of the makers, and it was held that he could recover. In that case there was no notice either to the bank or to B. that the holder of the note had no right to procure its discount from any one but the bank, and it was with reference to these facts that the judge writing the opinion, said : "Nor is the validity of the note affected by the circumstance that it was drawn for the purpose of being discounted at the Bank of Chenango. It was made to raise money on. It did not change the responsibility of any of the parties to it that the money was advanced by Birdsall instead of the bank."

In *Utica Bank* v. *Ganson* (10 Wend. 315), a note was made by a debtor payable to a bank in its corporate name for the purpose of raising money on it at such bank to pay and satisfy a particular debt, and the debtor procured a third person to become a joint maker of the note, who signed the same "A. B., surety," and the bank refused to discount the note ; and it was held that the creditor for whose benefit the note was made could with the assent of the bank, maintain an action upon it in the name of the bank against the makers, although the note was not discounted at the bank in pursuance of the original intention. In that case there was no notice to the creditor or to the bank of any special purpose for which the note was made NELSON, J., writing the opinion, said : "The admission of the fact that the note had been presented to the bank for discount and rejected, threw upon the holder the burden of showing that it came fairly and honestly into his possession, and for a valuable consideration, in order to repel the suspicion thus cast upon his title. * * * It cannot be said that the face of the note shows that it was made for a special purpose, and there is no evidence of that fact *aliude.*" In *Essex County Bank* v. *Russell* (29 N. Y. 673), a promissory note was made by R. and indorsed by F. & A. for his accomodation, to retire a previous note for like amount and indorsed by the same parties at the bank of W.

The bank refused to discount the new note, or to receive it for the old one; whereupon R., without the knowledge of the indorsers, put the note into the hands of C. to get the same discounted, and remit the proceeds to the bank of W. to retire the prior note. C. presented the note to the plaintiff's cashier, who discounted the note, giving C. for the proceeds a note for $500 made by B., which, though good and collectable, was past due and protested, and $285.93 in cash. No part of the proceeds of the discount were sent to the bank of W., or ever came to the hands of the makers and indorsers, or either of them; and it was held that, notwithstanding the diversion of the note, the plaintiffs were *bona fide* holders and entitled to recover the amount, it not having been received under such circumstances as called upon the plaintiffs to institute any inquiries as to D.'s right to the possession of the note, or to procure its discount. The decision was placed upon the ground that the plaintiffs had no notice whatever of the intended misappropriation, and no ground even to suspect that C. was not the *bona fide* owner of the note.

In *Grocers' Bank* v. *Penfield* (69 N. Y. 502), a promissory note was made for the accommodation of the payee, but without restriction as to its use, and an indorsee took it in good faith as collateral security for an antecedent debt of the payee and indorser, without other consideration; and it was held that he occupied the position of a holder for value and could recover thereon against the maker; that the precedent debt was a sufficient consideration for the transfer, and no new consideration was required to be shown; and that it was only where the note had been diverted from the purpose for which it was intended by the payee, or where some other equity existed in favor of the maker, that it was necessary that the holder should have parted with value on the faith of the note, in order to enforce the same. That decision was based upon the express ground that the indorsee took it in good faith.

These cases furnish no countenance to the doctrine that the transferee of negotiable paper who takes it knowing that it is transferred in violation of conditions or limitations imposed by

an accommodation maker, can nevertheless hold and enforce it against such maker.

In *Clinton Bank of Columbus*, for the use of *Rhodes* v. *Ayers and Neil* (16 Ohio R. 283), a note was made payable to a bank and signed by a surety and presented to the bank for discount and refused, and afterward discounted by a third person, without the knowledge of the surety; and it was held that an action would not lie at the suit of the bank for the use of the person discounting the note against the surety. That case goes further in the protection of accommodation makers than the authorities in this state would warrant. There the judge writing the opinion, used language quite applicable to this case: "Neil might be willing to become surety for Ayers to the Clinton Bank, when he would be utterly unwilling to have his note in the hands of Rhodes. He might be willing to lend his name to procure a loan from a party who would indulge him, who would advance to his principal the full face of the note, when he would be utterly unwilling to go security to one who was his personal enemy, or who would exact harsh terms or heavy interest of his principal. He might have been willing to aid him in procuring a loan of ready cash, when he would have been unwilling to become his surety for an old debt. He might have expected Ayers would be prompt to pay a bank debt in which the bank had the sole interest, when he knew he would be slow to pay an old debt due to a third party; and we think a court should not settle all these matters by declaring it immaterial to him who advanced the money on credit, so long as his principal received the benefit of the advance on the delivery of the note."

A surety has the right always to impose any limit he choose to his liability. He may always fix the precise terms upon which he is willing to become a surety, no matter whether those terms seem to be materal or immaterial. By imposing them, he makes them material, and one who takes his contract with a knowledge of the limitations cannot enforce it against him. The general rule as to a surety is that he is not to be bound beyond the plain terms of his contract, and it is not

sufficient to make him liable that he may sustain no injury by a change in the contract, and that it may even be for his bene- fit.   He has the right to stand upon the very terms of his con- tract and if a variation is made it is fatal.   (*Miller* v. *Stewart,* 9 Wheaton, 681.)

But it is said that the declaration of Calkins to the plaintiff at the time he negotiated the note to him were not sufficient to show that the note was made for a special purpose, or was signed by Crandall upon any conditions.   The rule is unques- tioned that the mere declarations of a prior holder of a *chose in action* cannot be given in evidence to effect the title or the rights of a subsequent holder and owner.   But does that rule apply when the declarations are made at the very time when the *chose in action* is negotioted to the person who is seeking to enforce it, and they are thus a part of the *res gestæ ?*   Decla- rations thus made qualify, and in some sense attach to the plain- tiff's title.   They are not conclusive and may be controverted and if untrue, the real truth may be shown.   Here the plaintiff acted upon these declarations for years, and thus may be said, in some sense, to have admitted their truth.   These declara- tions together with the conduct of the plaintiff, and the fact that Mrs. Petit was the payee named in the note, and that Calkins immediately went to her and applied for the loan from her upon the note, were sufficient evidence for submission to the jury upon the question whether the terms and conditions declared by Calkins were actually imposed, and the court, at least, erred in directing the verdict; and for these views we are not without authority.

In *Crain* v. *Wright* (46 Ill. 107), the action was brought by Mrs. Wright against Crane, as administrator of Martin, to recover $500.   It became material upon the trial to prove that certain money, paid by Mrs. Wright's husband to Martin, actually belonged to her ; and she was permitted to prove the declarations of her husband to Martin at the time of the pay- ment, to the effect that the money belonged to her.   This evi- dence was held to be competent as part of the *res gestæ.*   The judge, writing the opinion, said : " The declarations of the

husband that money paid on the purchase of the land belonged to his wife, and that he wished the contract to inure to her benefit, are admissible like all such declarations. They are not conclusive, but may be proved to be untrue either by positive or circumstantial evidence."

In *Hayslep* v. *Gymer* (1 A. & E. 162), the action was brought to recover certain bank-notes delivered to the defendant by the plaintiff, and she proved that the defendant, who was the executor of W., having questioned her as to her having possession of some property belonging to W., she handed the notes over to him, stating that W. had given them to her before his death. The defendant did not deny the statement, but had no means of knowing its truth or falsity. There was contradictory evidence as to whether the defendant said he would keep the notes, or that he would keep them to be returned to the plaintiff on request. The notes had been seen in the plaintiff's possession before W.'s death, and it was held that the declaration made by the plaintiff to the defendant at the time she handed the notes to him, might go to the jury as evidence in her favor, on the ground (though very slight) of acquiescence in its truth by the defendant, and also as being a part of the *res gestæ* on the occasion of the defendant's obtaining the notes, and as giving a character to the whole conduct of the plaintiff. PARKE, J., writing one of the opinions, said : " A declaration made in the presence of a party to a cause becomes evidence, as showing that the party, on hearing such a statement, did not deny its truth. Such an acquiescence, indeed, is worth very little where the party hearing has no means of personally knowing the truth or falsehood of the statement." PATTERSON, J., writing one of the opinions, said : " Here, Mrs. Hayslep was obliged to show how the defendant had obtained possession of the money, and she might give evidence of what she herself said at the time, as part of the transaction, and that being before the jury, it cannot be said that they were not entitled to give it consideration. The defendant, having asked her how she obtained the money, did not, in terms, deny the truth of her answer, but he retained the money,

and thereby perhaps showed that he did not acquiesce in her account. There was, however, upon the whole transaction, evidence, though of very trifling weight, to go to the jury, and there were circumstances which supported the plaintiff's statement."

Our conclusion, therefore, is that the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except GRAY, J., not voting.

Judgment reversed.