VAN BRUNT, P. J., concurs in result. ANDREWS, J., concurs.

---

WESTERN NAT. BANK OF CITY OF NEW YORK *v.* WOOD *et al.*

(*Supreme Court, General Term, First Department.* May 13, 1892.)

**1. ACTION ON NOTE—BONA FIDE HOLDER—BURDEN OF PROOF.**
    In an action by the transferee before maturity of an accommodation note, the production of the note by plaintiff shows *prima facie* that he is a *bona fide* holder, and an instruction imposing on him the burden of showing that he took the note without notice is erroneous.

**2. SAME—DIVERSION OF NOTE.**
    In an action on a note by the transferee thereof before maturity, proof by defendants that the note was given for a particular purpose, and had been diverted from that purpose, shifts to plaintiff the burden of showing that he is a *bona fide* holder.

**3. SAME—PAROL EVIDENCE.**
    Parol evidence is admissible to show that the use of an accommodation note was restricted by an agreement between the parties.

**4. SAME—NOTICE TO EX-OFFICER OF CORPORATION.**
    Notice to a person as to the equities between the parties to a note is not notice to a bank which acquires title to the note, of which bank such person was at one time president, if he ceased to be connected with the bank before the note was executed.

Appeal from circuit court, New York county.

Action by the Western National Bank of the City of New York against Frederick Wood, impleaded with Edward R. Teller, on a note. From a judg-

ment entered on a verdict for defendants, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

For former report, see 18 N. Y. Supp. 718.

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Charles F. MacLean,* for appellant. *Smith, Bowman & Close, (Artemas B. Smith,* of counsel,) for respondents.

O'BRIEN, J. This action was brought to recover the amount of a promissory note, made by the defendant Wood to the order of the defendant Teller, and indorsed by the latter. The defendant Wood, in his answer, admits the making of the note, admits the indorsement by Teller, and the delivery to the plaintiff; but sets up, by way of defense, that the note so indorsed was delivered to the Homestead Bank, from whom the plaintiff received it, as collateral security only for the repayment to the Homestead Bank of certain moneys which that bank had advanced to one Russ, who was,.at the time, president thereof, to enable him to proceed with the erection of certain houses in the city of New York for the benefit of the Homestead Bank, and that the note in suit was made with the express understanding and agreement between the bank and Russ and this defendant that payment thereof should not be required until the building should be completed or the permanent loan upon the houses obtained, and then only should the money so loaned and advanced be repaid out of such moneys obtained upon the loans; that the bank agreed that it would keep and retain the note, and not part with it, or allow it, or the money secured to be paid thereby, to be in any manner enforced against this defendant; and this defendant restricted the said Homestead Bank to such use only of said note at the time he made the same. That an agreement substantially as set forth in the answer was made between persons who were officers and directors of the Homestead Bank and the defendant Wood is placed beyond dispute. Appellant claims that evidence to show the purpose for which the note was made and delivered to the Homestead Bank was improperly received, upon the ground that parol evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of the execution, cannot be received to contradict or vary its terms. With this statement of the general rule no fault is to be found. But the appellant clearly overlooks the exceptions and modifications which, from time to time, have been made to this rule, and the distinction in law between oral proof of a restriction upon the use of an accommodation paper and oral proof at variance or in contradiction of its terms. In respect to the former, pointing out the modifications in the rule, see the cases of *Thomas* v. *Scutt,* 127 N. Y. 133, 27 N. E. Rep. 961, and *Eighmie* v. *Taylor,* 98 N. Y. 288; and, as to the competency of parol proof to show the conditions and restrictions imposed upon notes, see *Bank* v. *Colwell,* (Sup.) 10 N. Y. Supp. 864; *Isaacs* v. *Jacobs,* (Com. Pl. N. Y.) 8 N. Y. Supp. 344; and *Benjamin* v. *Rogers,* 126 N. Y. 60, 26 N. E. Rep. 970.

The evidence offered being, therefore, competent, and having shown that the delivery of the note by the Homestead Bank to the plaintiff was a diversion from the purposes for which the note was originally intended, testimony was further presented, with the view of showing that the plaintiff took the same for an antecedent debt, and with notice of all the equities existing between Wood and the Homestead Bank. Without commenting upon or referring in detail to the testimony relating to the subject of whether or not the note was delivered to the plaintiff for money actually advanced, or in payment of an antecedent debt,—there being a want of clearness and consequent doubt upon this question,—we think that, upon the testimony, it was properly submitted to the jury, and were it not for the manner in which such submission was made, and the introduction of certain testimony, and the effect given to it, as to showing notice by plaintiff of the equities in favor of defendant, we

should not be inclined to disturb the verdict of the jury. We think, however, that the charge, as made by the learned trial judge, and the manner in which the questions for the consideration of the jury were presented, tended to prejudice the plaintiff. After presenting the question as to whether or not such note was received by plaintiff in consideration of cash then actually advanced, or in payment for an antecedent debt of the Homestead Bank, the learned trial judge said: "In order to preclude your consideration of the agreement advanced by the defendant, the plaintiff must not only show that it was a *bona fide* holder, but also that it was a *bona fide* holder without notice." Upon that point the evidence introduced on the part of the defendant to show notice of the actual condition of affairs in regard to the note depends upon the testimony of the defendant himself and that of Mr. Jordan. Again, later on, he says: "If you find in favor of the defendant upon the *bona fide* notice question, then it will be necessary for you to consider the evidence in relation to the agreement;" counsel for plaintiff excepting to the court so charging that the burden of proof was on it to show that it was a *bona fide* holder without notice, and requesting the court to charge that the production of the note was evidence of title, and that upon that the plaintiff was entitled to recover on a *prima facie* case. The defendant, seeing the error into which the court had inadvertently fallen, requested the court to charge that, while the proposition of the plaintiff's counsel was true, until the agreement was proved, and a diversion of the note from the purpose for which it was given, then the burden of proof changed from the defendant to plaintiff; that if they believed that an agreement existed, and that the note was diverted from the purpose provided for by the agreement, then the burden of proof changed from defendant to plaintiff, and plaintiff must give proof that it paid value for the note in good faith; and the court added, "and received it without notice." This last addition of the court to the suggestion of defendant's counsel, which required the plaintiff, upon proof of the agreement, to show that it received the note without notice of any prior equities, was not, upon the testimony, as we read it, in dispute. The only evidence of any notice brought home to the plaintiff of the agreement between the defendant Wood and the Homestead Bank was testimony as to conversations with a Mr. Jordan, who, at one time, was president of the plaintiff bank. It appears that in February, 1890, Mr. Jordan had gone to the Homestead Bank to discuss the action of the directors in using the bank funds. As to just what information Mr. Jordan then received was a disputed fact upon the trial. Whatever may have been the knowledge he thus derived in February, 1890, the testimony shows that Mr. Jordan severed his connection with the plaintiff bank in March, 1890, before the execution of the note in suit, the transfer of which to the plaintiff took place in April, 1890, or two months after the visit of Mr. Jordan to the Homestead Bank. As Mr. Jordan had severed his connection with the plaintiff bank about a month before the transfer of the note in suit, we do not think that any information which Mr. Jordan had was of a kind that, so far as the note in suit was concerned, would be binding upon the plaintiff. Mr. Jordan, it is true, was at one time the president, and, to that extent, the representative, of the plaintiff, and notice to him would be notice to the bank. When, however, his relations with the bank had been severed, which would thus remove the knowledge which he possessed from the plaintiff, we do not think it could be claimed that his prior knowledge could have any bearing or effect in respect to a transaction occurring subsequent to his relations with the bank being severed; it seeming to us that, when Jordan severed his connection with the bank, all connection between the bank and its means of knowledge was severed, so as to exclude all idea of notice to the bank through him. While, therefore, it may have been proper to have allowed evidence of what knowledge Jordan had to be introduced, which, had Jordan remained president of the plaintiff, would have been bind-

ing upon the bank, or had the fact thus established been connected by evidence that, although his official relations with the bank had been severed, the knowledge or information which he possessed had been by him communicated to the bank, then there would have been present in the case some evidence of notice brought home to the plaintiff.

But apart from this, as already said, we think that the charge of the learned judge, in respect to the burden of proof, was very apt to prejudicially present the plaintiff's rights to their consideration. In *Bank* v. *Haulenbeek*, (Sup.) 1 N. Y. Supp. 629, the principles applicable to notes and the burden of proof are thus referred to: "The plaintiff was presumed to be a holder for value before maturity, in the absence of notice of evidence of such defense. The want of consideration between the original parties did not change the presumption, or require actual proof of the payment of a consideration and an actual transfer before maturity. Being payable at a time after its date, the plaintiff held it clothed with the presumption that it was negotiated for value in the usual course of business, before maturity, and without notice of any equities between the prior parties to the instrument. Such being the rule, it was incumbent upon the appellant to show affirmatively that the plaintiff had notice of the diversion of the paper. The case does not fall within that class of cases cited by appellant's counsel, where the paper was obtained by duress, fraud, or theft. * * *" The presumption, therefore, being in plaintiff's favor, there was no burden placed upon it of showing that it was a *bona fide* holder, without notice.

It may be claimed, however, that this was cured by the subsequent request of defendants' counsel to the court to charge, with some modification, the plaintiff's request as to the burden of proof. The proposition of law contained in this request was entirely proper, namely, that upon proof of an agreement, and, contrary thereto, a diversion of the note from the purpose for which it was given, then the burden of proof changes from defendant to plaintiff, and plaintiff must then show that it acquired it *bona fide* for value, in the usual course of business, while current, and under circumstances which did not impeach its validity. It is true that in the case of *Bank* v. *Haulenbeek* it is stated that it is only in cases where paper is obtained by "duress, fraud, or theft" that the burden is thus shifted from defendant to the plaintiff. We do not understand, however, that that case intended to express all instances in which, upon proof made by the defendant, the plaintiff is bound to assume the burden of showing that it is a holder for value, without notice. As remarked in a Virginia case: "In the nature of things, it is impossible to lay down any fixed, unvarying rule as to the circumstances which will be deemed sufficient to throw upon the holder the burden of showing that he has given value for a note. The courts must determine, in each, whether the transaction is of such a character as to rebut the presumption usually arising from the possession of the instrument." *Duerson's Adm'r* v. *Alsop*, 27 Grat. 249. In most of the states proof of fraud or illegality is required to shift the burden of proof, and proof merely of want of consideration or misapplication of the instrument does not shift the burden of proof. We must regard, however, the rule, so far as this state is concerned, to be different; for the authorities hold that a diversion or misapplication of a note will shift the burden of proof upon the holder. Applying these rules to the facts appearing, the possession and production in evidence of the note in suit imported *prima facie* that plaintiff acquired it *bona fide*, for full value, in the usual course of business, before maturity, and without notice of any circumstances impeaching its validity, and that it is the owner thereof, and entitled to recover the full amount against all other parties. The defendants, however, upon the proof of a diversion of the note, would have taken from plaintiff the benefit of the presumptions thus arising, and would require of it to show that it was a *bona fide* holder without notice. The questions of fact were so close and

doubtful as to require the law in regard to the rights of the parties to be clearly expressed, and, if we were at liberty to decide upon the value of the testimony offered, we should be inclined to the view that the testimony supporting plaintiff's contention that it was a holder for value, without notice, was stronger and weightier than the testimony upon these points offered by the defendants. The weight of evidence, however, not being so clear and overwhelming in plaintiff's favor as to justify a disturbance of the verdict of the jury, if other objections to allowing it to stand did not exist, we are brought to the consideration of the effect to be given to the other objections, —to which attention has been already called,—and which, we think, left the question of the burden of proof in such an unsatisfactory and indistinct form as must have resulted in prejudice to the plaintiff. Upon the whole case, therefore, and the exceptions presented, we are of opinion that the judgment should be reversed, and new trial ordered, with costs to appellant to abide event.

VAN BRUNT, P. J. I concur in result. In many cases the expression is used that under certain circumstances during a trial the burden of proof changes. This is clearly error. The burden of proof always remains the same. It may be that the defendant may tend to establish a set of facts which may answer the presumptions which originally existed in favor of the plaintiff, but this does not change the burden of proof. Such evidence simply tends to fulfill the burden; that is all. The presumptions with which the trial of a case commences remain with it to the end, unless so completely overcome by proof that there remains no question for the jury.

ANDREWS, J., concurs in the result.