In the Matter of the Application of INTER-OCEAN FOOD PRODUCTS, INC., Respondent, for an Order Directing that Arbitration Proceed between Itself and the YORK MERCANTILE COMPANY, INC., Appellant.

First Department, November 2, 1923.

Arbitration — proceedings to compel arbitration under contract — courts of this State will not compel citizens to go to foreign jurisdiction to arbitrate although contract so provides — remedy is to stay, under Arbitration Law, § 5, trial of action here by party who refuses to carry out arbitration agreement.

While an agreement to arbitrate in a foreign jurisdiction, and before a foreign arbitrator, is not invalid or illegal, it cannot be enforced by the courts of this State as between citizens of the State who are the parties thereto, by compelling them to go without the State and before a foreign tribunal, there to arbitrate their disputes.

The only remedy available under such circumstances in the courts of this State is to stay the trial of an action here by the party who has refused to carry out his agreement to arbitrate and who seeks the aid of our courts to enforce his claim therein. Such a stay may clearly be given under the provisions of section 5 of the Arbitration Law.

APPEAL by the York Mercantile Company, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of July, 1923, directing that arbitration proceed without the State of New York pursuant to the terms of a written contract between the parties.

*Tanzer & Lane* [*Eugene L. Mullaney* of counsel], for the appellant.

*Breed, Abbott & Morgan* [*Eugene W. Leake* of counsel; *Hiram Thomas* and *William B. Shealy* with him on the brief], for the respondent.

DOWLING, J.:

On or about September 21, 1922, at the city of New York the York Mercantile Company, Inc., and the Inter-Ocean Food Products Company, Inc., both domestic corporations, entered into a contract on a form known in the trade as the California Dried Fruit Contract, Rail Shipment, whereby the York Mercantile Company, Inc., contracted to purchase, and the Inter-Ocean Food Products Company, Inc., to sell and deliver during the months of October and November, 1922, 2,400 twenty-five pound boxes of Thompson's Recleaned Raisins, 1922 crop, at nine and one-quarter cents per pound, f. o. b. cars common shipping point California. Under the terms of the contract all disputes arising out of the failure of the seller to ship or the buyer to accept were to be settled by arbitration to be held before the Dried Fruit Association of New York, or before some one of the other bodies mentioned in the contract. At this time in the trade, there were two forms of contract, the rail shipment form upon which this contract was made, and the water shipment form. Under the provisions of the rail shipment contract if merchandise covered thereby was subsequently routed by steamer, the terms of the rail shipment contract were to be modified and superseded by the provisions of the water shipment contract. Subsequent to the making of the contract, the buyer, the York Mercantile Company, Inc., routed the merchandise by water and the terms of the water shipment contract superseded the terms of the rail shipment contract. The water shipment contract provided that all disputes arising between the buyer and seller should be submitted to arbitration, but specifically stated that such arbitration should be held at San Francisco, Cal., before the arbitration committee of the Dried Fruit Association of California.

First Department, November, 1923.          [Vol. 206

The arbitration clause in the rail contract originally signed by the parties is as follows:

" Arbitration: Except for the determination to be made by the California State Commission of Horticulture as provided for under sub-heading ' Future Sales ' of Liability Clause, any dispute arising under this contract shall be immediately submitted to arbitration in either New York, Chicago, San Francisco, Baltimore, Boston, Buffalo, Cincinnati, Cleveland, Denver, Detroit, Indianapolis, Kansas City, Minneapolis, New Orleans, Oklahoma City, Omaha, Peoria, Philadelphia, Pittsburgh, Richmond, St. Louis, St. Paul, Seattle or Toledo. The particular city in which arbitration is to be held shall, in the absence of agreement by the parties, be in the city which is nearest to destination of shipment. Arbitrations in New York shall be held before the Dried Fruit Association of New York; in Chicago, before the Dried and Canned Foods Association; in San Francisco, before the Dried Fruit Association of California; in the remaining cities, by the joint arbitration boards appointed by the National Wholesale Grocers' Association and the National Canned Goods and Dried Fruit Brokers' Association. A written statement of facts and anything else that may have proper bearing on the case, together with written argument thereon, may be presented to the Secretary of the Association, or the Chairman of the Arbitration Board, as the case may be, and shall by him be submitted in its entirety to the arbitrators, but no oral presentation shall be made unless the parties agree thereto and the same is permitted, or requested by the arbitrators. If the decision is in favor of Seller, invoice, if unpaid, shall become due and payable, at once. If decision is against Seller, arbitrators shall determine amount of allowance which, if draft has been paid, shall immediately be refunded by Seller, and if draft has not been paid, shall be deducted from invoice and the correct amount paid immediately. If arbitrators find bad faith, or gross carelessness on the part of Seller, they may either allow rejection, award damages therefor, or require another tender in compliance with this contract. Arbitration shall be held upon not less than one per cent (1%) unbroken and unopened packages. The arbitrators shall assess costs of arbitration and the decision shall be final and binding on both parties who hereby agree to comply therewith. Failure of Seller to ship, or Buyer to accept, shall be considered a dispute to be settled by arbitration. Each party hereby agrees that in the event of his failure to comply with the award of the arbitrators within ten (10) days of date of such award, an action in court shall lie against him, based upon such award."

In the rail contract so executed by the parties there is a pro-

vision for a change in the routing from rail to water shipment and the following clause relating thereto:

" On such water shipments and on shipments to be made via Gulf Lines, the provisions of this contract shall be modified and superseded by the terms and conditions contained in the form of contract of the Seller, effective June 2, 1919, known as Dried Fruit Association of California Water Shipment Contract."

The arbitration clause in the water shipment form of contract is as follows:

" Arbitration: Should the Dried Fruit Association of California certificate as to quality, grade and condition be refused, immediate arbitration shall be held at San Francisco before the Arbitration Committee of the Dried Fruit Association of California under its rules, and the findings of the arbitrators shall then take the place of the certificates with equal force and effect. Should arbitrators find goods to be a full grade or more lower than called for by contract, said Association shall, before award is made, wire to Buyer who shall immediately decide whether he will accept at an allowance to be fixed by arbitrators, or demand another tender, or in case a proper delivery cannot be made within contract time have arbitrators fix damages for non-delivery. In the absence of immediate telegraphic reply from Buyer, arbitrators shall proceed to complete the award in accordance with rules. Each party hereby agrees that in the event of his failure to comply with the award of the arbitrators within ten (10) days of the date of such award, an action in court shall lie against him, based upon such award. Any other dispute arising hereunder between the parties hereto shall be submitted to said Association for arbitration under its rules and the decision of the arbitrators shall be final and binding upon the parties hereto."

The goods in question did not arrive until January 5, 1923, when appellant refused to accept or pay for them, because they were not shipped until after December 1, 1922, while respondent claims the delay in shipment was due to appellant's instructions to that effect.

Respondent thereupon moved for an order that arbitration proceed as provided in the contract and the court made an order adjudging that it had jurisdiction to direct that arbitration proceed without the State, as provided in the contract, and further ordered: " that the parties hereto proceed to arbitrate all disputes between them arising out of said contract, as provided for in said contract, before the Dried Fruit Association of California at San Francisco, California, according to its rules, on or before the expiration of thirty (30) days after the entry of this order, and that either party

may bring the arbitration to a hearing by a written notice of not less than fifteen (15) days, served upon the opposite party or its attorneys."

The question involved in this appeal is whether the courts of this State will enforce performance of the agreement that arbitration shall proceed in a foreign jurisdiction.

When a similar question was urged in the case of *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261) Judge CARDOZO said in his opinion (p. 273): " We do not now determine whether an arbitration clause, framed in contemplation of the statute of Great Britain, and calling for sessions of the arbitrators in London, is susceptible of enforcement under the statute of New York. We leave that question open (*Cameron* v. *Caddy*, 1914, A. C. 651, 656; *Austrian Lloyd S. S. Co.* v. *Gresham Life Assur. Society*, 1903, 1 K. B. 249; *The Cap Blanco*, 1913, P. 130, 135; *U. S. Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.*, 222 Fed. Rep. 1006)."

We are referred to no American case in an appellate court which decides the question at issue, though a similar agreement to arbitrate before this same Dried Fruit Association of California was refused enforcement in *Matter of California Packing Corp.* (121 Misc. Rep. 212) by Mr. Justice LYDON, who assigned three grounds for such refusal: (1) " That no award taken without the State may be the basis of a judgment;" (2) that " in California neither party could be compelled to arbitrate under their agreement;" (3) that " if the arbitration be had within this State, a commission may issue to take depositions of witnesses."

In *Meacham* v. *Jamestown, F. & C. R. R. Co.* (211 N. Y. 346), which was a case under the Pennsylvania Arbitration Act,* which would, if enforced, have required foreign arbitration, Judge CARDOZO said in a concurring opinion (pp. 352, 353): " When resort is had to the foreign tribunal for the purpose of determining whether certain things do or do not constitute a breach, the cause of action must in the nature of things be complete before jurisdiction is invoked, and cannot be postponed by the declaration that it shall not be deemed to have matured until after judgment has been rendered. This must be so whether the tribunal is a court or a board of arbitrators. Indeed, the considerations adverse to the validity of the contract are more potent in the latter circumstances, for in the one case we yield to regular and duly organized agencies of the State and in the other to informal and in a sense irregular tribunals (*Mittenthal* v. *Mascagni*, 183 Mass. 19, 23). In each case, however, the fundamental purpose of the contract is the same: to submit the rights and wrongs of litigants to the arbitra-

---

* See Penn. Stat. 1920, § 597 *et seq.*— [REP.

ment of foreign judges to the exclusion of our own. Whether such a contract is always invalid where the tribunal is a foreign court, we do not need to determine. There may conceivably be exceptional circumstances where resort to the courts of another State is so obviously convenient and reasonable as to justify our own courts in yielding to the agreement of the parties and declining jurisdiction (*Mittenthal* v. *Mascagni, supra*). If any exceptions to the general rule are to be admitted, we ought not to extend them to a contract where the exclusive jurisdiction has been bestowed, not on the regular courts of another sovereignty, but on private arbitrators."

As I read the English cases to which our attention has been called (and which in large part are those cited in the opinion in the *Berkovitz* case above quoted) the furthest extent to which the English courts have been willing to go is to decline to hear a cause in which there was a valid agreement to submit the matter in difference to a foreign jurisdiction. But this is very different from ordering the parties to proceed to a foreign jurisdiction in order to arbitrate their differences before a foreign tribunal.

Thus, in *Austrian Lloyd Steamship Company* v. *Gresham Life Assurance Society, Limited* (L. R. [1903] 1 K. B. 249), decided by the Court of Appeal of England, a policy of life insurance had been effected by a foreigner with an English insurance company having a branch office at Budapest. The policy was in the French language and provided that premiums and insurance money were to be payable at Budapest. It contained a condition of which the English translation was as follows: " For all disputes which may arise out of the contract of insurance, all the parties interested expressly agree to submit to the jurisdiction of the courts of Budapest having jurisdiction in such matters."

It was held that the above-mentioned condition constituted a " submission " within the meaning of the English Arbitration Act of 1889 (52 & 53 Vict. chap. 49), and a stay of the action in the English courts was granted.

In *The Cap Blanco* (L. R. [1913] 1 Pro. Div. 130), decided by the Court of Appeal of England, the plaintiffs, under a bill of lading giving liberty to call at intermediate ports and providing that any disputes as to its interpretation were " to be decided in Hamburg according to German law," shipped at Hamburg on board a German steamer owned by defendants ten cases of gold coin for delivery to order of plaintiffs in South America. The vessel called at Southampton on the way out and upon arrival in South America only nine cases were delivered to plaintiffs' order. On the return voyage to Hamburg the vessel again put

into Southampton where she was arrested on behalf of plaintiffs in an action for breach of contract or duty in respect to the missing case. It was held on objection of defendants to the jurisdiction of the English courts that proceedings must be stayed in order that the parties might litigate in Germany, as the clauses in the bill of lading amounted to a submission under the English Arbitration Act of 1889.

In the recent case of *Czarnikow* v. *Roth, Schmidt & Company* (L. R. [1922] 2 K. B. 478) the Court of Appeal of England refused to enforce certain rules of the Refined Sugar Association which it held to be against public policy and invalid, as involving an ouster of the statutory jurisdiction of the courts under the English Arbitration Act of 1889.

The respondent cites the case of *Penn* v. *Lord Baltimore* (May 15, 1750, 1 Ves. Sr. 443), where a bill was brought for specific performance of articles between the parties, entered into on May 10, 1732, for the adjustment by commissioners of certain disputes as to the boundaries and limits of Maryland and Pennsylvania. The court there enforced the performance of the agreement upon the ground that it had jurisdiction of the persons of the parties and could compel them in England to carry out their obligations. But it did not relegate them to a foreign jurisdiction, nor were they compelled to resort thereto.

Nor are cases helpful of the type of *Gardner* v. *Ogden* (22 N. Y. 332), where the court, having jurisdiction of the person of a defendant, directs him to execute within the State a conveyance of lands outside its boundary. That is not, as here, an order to a defendant to leave the jurisdiction to litigate his claim.

*United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.* (222 Fed. Rep. 1006) was a suit instituted in admiralty in the United States District Court, Southern District of New York. The defendant moved to stay the prosecution of the actions, on the ground that under a provision in a charter party made in London out of which dispute arose, it was provided that " any dispute arising under this charter shall be settled in London by arbitration * * * and this decision shall be binding upon both parties." The court held that while this was an agreement for arbitration applying to the entire contract and undoubtedly valid, under the English Arbitration Act of 1889, it was void and unenforcible under the decisions of the United States Supreme Court in a Federal forum.

The general trend of authority, it seems to me, is that no court will willingly relinquish jurisdiction over controversies arising between those who are amenable to its judgment, nor will any

sovereignty order its citizens or subjects to go before the tribunals of another sovereignty and submit to its jurisdiction that their differences may be adjudicated.

I am of the opinion that while an agreement to arbitrate in a foreign jurisdiction, and before a foreign arbitrator, is not invalid or illegal, it cannot be enforced as between citizens of this State who are the parties thereto, by compelling them to go without the State, in a foreign jurisdiction and before a foreign tribunal, there to arbitrate their disputes. I am also of opinion that the only remedy available under such circumstances in the courts of this State is to stay the trial of an action here by the party who has refused to carry out his agreement to arbitrate and who seeks the aid of our courts to enforce his claim therein. Such a stay may clearly be given under the provisions of section 5 of the Arbitration Law.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.