KELVIN ENGINEERING COMPANY, INC., Plaintiff, *v.* ALFREDO BLANCO and Others, Defendants.

Supreme Court, New York County, April 27, 1925.

**Guaranty and suretyship — action to recover damages arising from breach of contract — defendant who guaranteed payments to be made by other defendants under said contract is not liable for principal's failure to perform — arbitration — contract providing for submission of controversies to courts of foreign jurisdiction is agreement to arbitrate — defendants entitled to stay of determination of plaintiff's action pursuant to Arbitration Law, § 5.**

A guarantor, who guarantees all payments which will become due under a building contract, is not liable for all obligations under the contract including dam-

ages arising out of a breach thereof by his principal; a guarantor of payments is not a guarantor of performance.

Accordingly, a party defendant in an action to recover damages for the breach of a building contract is entitled to judgment on the pleadings dismissing plaintiff's complaint against him, where it appears that he only agreed to guarantee all payments to be made by the other defendants, since his liability as surety under the contract extended only to breaches of obligations to make payments thereunder and not to damages which might be suffered by the plaintiff as the result of a breach in performance by the other defendants.

A clause in said contract providing for the submission of a controversy between the parties to courts of a foreign jurisdiction is an agreement to arbitrate and as such requires the application of section 5 of the Arbitration Law permitting the court to decline jurisdiction of plaintiff's action and to stay proceedings until the plaintiff determines to abide by the terms of the contract.

MOTION by the defendants for judgment on the pleadings or in the alternative for a stay of proceedings pursuant to section 5 of the Arbitration Law.

*George B. Hayes* [*Charles E. McMahon* of counsel], for the plaintiff.

*Leventritt, Riegelman, Carns & Goetz* [*Norman S. Goetz* of counsel], for the defendants.

LEVY, J.:

The plaintiff sought to recover damages in the sum of $700,000 on account of the alleged failure of the defendants Blanco and Almeida to perform the contract which required the construction and installation of a sugar mill by said plaintiff on the Blanco property, for the sum of $2,100,000. The original agreement written in Spanish was made between the plaintiff and Blanco Bros. as an " association " and personally guaranteed by these two defendants in their individual capacity. The defendant Almeida is made a party by virtue of his undertaking in paragraph 15 of the said agreement to guarantee all payments to be made by the other defendants. The complaint alleges that the plaintiff began preparations for carrying out such contract and expended large sums of money therefor; that on or about the 4th day of October, 1920, it was notified by the defendants Blanco by cable to cease work upon the contract and that thereupon it stopped all work as instructed. The answer contains general denials as well as a number of defenses to which the plaintiff interposed a reply. The disposition of this motion involves the following considerations: (1) Are the defendants entitled to judgment on the pleadings? (2) Is the defendant Federico Almeida, irrespective of the determination of the preceding issue, entitled to judgment on the pleadings? (3) Should the defendants be granted a stay

in the event of a denial of their motion for judgment on the pleadings?

The first two points may be disposed of briefly. As to defendants Blanco a clear issue of fact is raised by the pleadings and the motion as to them in this respect must be denied.

With regard to defendant Almeida, I am of the opinion that his liability as surety under the contract extended only to *breaches of obligations to make payments* thereunder, and not to damages which might be suffered by the plaintiff as the result of the breach otherwise by the defendants Blanco. The contract in the preamble described the parties as Blanco Bros., parties of the first part, or buyers, and Kelvin Engineering Company as party of the second part, or sellers, and recites: " We enter into the present contract to furnish and install machinery and material upon the following terms." It thus becomes apparent that the defendant Almeida is not referred to as one of the principals to the instrument, and I am unable to find anything to connect him with the general obligations attaching thereto. His obligation is found in paragraph 15 of the agreement which reads as follows: " Mr. Federico Almeida, native of the Canary Islands, Spain, of legal age, married, planter, and resident of Santiago de Cuba, in accordance with an agreement executed on the 22nd day of June, 1920, as set forth in public document No. 301, before Notary Public Eduardo Vinent, of Santiago de Cuba, subscribes these presents for the purpose of making known: That he hereby constitutes himself surety in Solido of all the payments to be made by the Buyers hereunder." The buyers are the defendants Blanco and under the agreement with the plaintiff certain installment payments were to be made, the discharge of which was obviously guaranteed by the defendant Almeida. The plaintiff seeks to recover against him not for failure to pay the installments due but for damages suffered on account of the breach of the contract proper. For this Almeida evidently did not obligate himself. That the parties had this distinction in mind is indicated by paragraph 16 of the contract: " Messrs. Alfredo and Francisco Blanco, personally, constitute themselves sureties *for all the obligations* of the buyers as incurred under the agreement as set forth in this instrument." This manifests a decided intention to draw a distinction between the obligations as sureties assumed by the Blancos as individuals — in contradistinction to their liability as an association — and the suretyship of Almeida. The individuals Blanco became surety for *all* the obligations of the buyers as incurred under the agreement, whereas Almeida became surety *only* for all *payments* which would become due under such contract. Had it been the purpose to hold Almeida

liable for all the obligations of the contract, it would have been unnecessary to single him out as burdened with specific obligations. (See *De Luka* v. *Goodwin,* 142 N. Y. 194; *Beagle* v. *Cable,* 55 App. Div. 155; *McAfee* v. *Wyckoff,* 44 Misc. 380; *Benjamin* v. *Rogers,* 126 N. Y. 60, 70.) Therefore, the motion for judgment on the pleadings as to this defendant is granted. The application for judgment on the pleadings as to the defendants Blanco having been denied, it remains to consider the rather interesting and comparatively novel question of their right to a stay of proceedings pursuant to section 5 of the Arbitration Law.

The 14th clause of the contract reads: " The parties hereto submit themselves to the courts of the City of Santiago de Cuba for all questions relating to performance or non-performance of this contract, expressly renouncing their right to litigate in any other place." This agreement, defendants urge, makes it necessary to submit the question of plaintiff's right to damages to the courts of Cuba; and that if this court cannot decree such submission, it should in any event stay all proceedings on the part of the plaintiff pursuant to section 5 of the Arbitration Law. On the other hand, the latter argues that the so-called arbitration agreement would oust this court of jurisdiction, and further, that it is not an agreement to submit to arbitration. Unquestionably, this court cannot direct parties to proceed to submit their controversy to the courts of another jurisdiction, but it may, by virtue of section 5 of the Arbitration Law, stay the trial in this forum until such arbitration has been had in accordance with the terms of the agreement. The precise point was passed upon by the Appellate Division in *Matter of Inter-Ocean Food Products, Inc.* (206 App. Div. 426). In that case two corporations entered into an agreement in New York by the terms of which all disputes were to be settled by arbitration at San Francisco, Cal. Subsequently, a dispute arose, and an attempt was made to have the matter submitted for arbitration in California. A motion to that effect was made, which was granted, directing the parties to proceed with such arbitration. On appeal the Appellate Division held that citizens of this State could not be compelled to go into a foreign State to arbitrate their disputes, but that " the only remedy available under such circumstances in the courts of this State is to stay the trial of an action here by the party who has refused to carry out his agreement to arbitrate and who seeks the aid of our courts to enforce his claim therein." But, says the plaintiff, the determination of the Appellate Division in that case had reference solely to agreements to submit to arbitration, whereas the agreement involved in this controversy necessitates submission to the courts

of a foreign jurisdiction, which is not within the contemplation of the Arbitration Law. This raises a somewhat unusual point, never before determined in this jurisdiction, so far as I am able to discover; whether an agreement to submit controversies to the courts of a foreign jurisdiction is an agreement to arbitrate. The English cases hold the affirmative of this proposition. In *Austrian Lloyd S. S. Co.* v. *Gresham Life Assurance Society, Ld.* (L. R. [1903] 1 K. B. 249) a dispute arose as to the following agreement contained in an insurance policy: " For all disputes which may arise out of the contract of insurance, all the parties interested expressly agree to submit to the jurisdiction of the courts of Budapest having jurisdiction in such matters." It was argued there, as it is here by the plaintiff, that such an agreement did not require a submission to arbitration. The court, however, held, " Having regard to the nature of the contract and its language, I am of opinion that the latter [defendant's] construction is the correct one. * * * In this case, instead of nominating a particular individual as arbitrator, the parties agree to submit any dispute arising under the contract to the courts at Budapest." It thereupon granted an order staying proceedings until recourse was had to such courts. To the same effect see *Law* v. *Garrett* (L. R. [1878] 8 Ch. Div. 26).

In *The Cap Blanco* (L. R. [1913] Prob. Div. 130) the determination turned upon the interpretation to be given the provision in a bill of lading that any disputes concerning its terms were to be decided in Hamburg according to the German law. There, Sir SAMUEL EVANS said: " The authorities cited, namely, *Law* v. *Garrett* (L. R. [1878] 8 Ch. D. 26), *Austrian Lloyd Steamship Co.* v. *Gresham Life Assurance Society, Ld.* (L. R. [1903] 1 K. B. 249), *Logan* v. *Bank of Scotland (No. 2)* (L. R. [1906] 1 K. B. 141), and *Kirchner & Co.* v. *Gruban* (L. R. [1909] 1 Ch. 413), appear to me to establish the proposition *that such a clause is to be treated as a submission to arbitration within the meaning of s. 4 of the Arbitration Act,* 1889. The tribunal at Hamburg is not specified, but a fair businesslike reading of the contract means that such disputes are to be tried by the competent court in Hamburg, and in accordance with German law. * * * In dealing with commercial documents of this kind, effect must be given, if the terms of the contract permit it, to the obvious intention and agreement of the parties. I think the parties clearly agreed that disputes under the contract should be dealt with by the German tribunal, and it is right to hold the plaintiffs to their part of the agreement. * * * Although, therefore, this court is invested with jurisdiction, I order that the proceedings in the action be stayed, in order that the parties may litigate in Germany, as they have agreed to do." (Italics mine.)

These two cases decided under the English Arbitration Law were cited with approval by Mr. Justice DOWLING in *Matter of Inter-Ocean Food Products, Inc.* (*supra*) as additional authority for granting a stay in that action, and this determination seems controlling.

We find the same result reached by the Supreme Judicial Court of Massachusetts. In *Mittenthal* v. *Mascagni* (183 Mass. 19) the contract contained the following provision: " The present contract, in its form and substance, is regulated by the Italian laws, by will of the parties concerned and according to article nine of the Italian Civil Code. Whatever difference or question there might arise between the parties, including the agent, will be acted upon by the civil authorities of Florence, Italy. Maestro Mascagni reserves the right of direct action in New York for the payment of his recompense; and therefore, he alone has the faculty to derogate the competence of the established contract."

Construing this clause, the court said: " We have little doubt that it was meant to give exclusive jurisdiction of all such matters to the Italian courts, saving only jurisdiction of suits by the defendant to recover his compensation, which is given to the courts of New York. This seems to be the meaning of the words of this translation * * *. *There is certainly nothing so objectionable in it, on grounds of public policy, that our courts will refuse to give it effect under our treaty with Italy, which gives the citizens of each country full rights in the courts of the other. Fonseca* v. *Cunard Steamship Co.*, 153 Mass. 553. * * * Perhaps the tendency in modern times is to permit greater freedom in contracting in matters of this kind than formerly. *Miles* v. *Schmidt*, 168 Mass. 339; *Daley* v. *People's Building, Loan & Saving Association*, 178 Mass. 13. In most cases, certainly in a case like the present, there is no occasion for the protection of the dignity or convenience of the courts. The contract was between citizens of foreign States who, so far as our tribunals are concerned, well might make any reasonable arrangement for the settlement of their disputes."

I am in accord with these views. It would be too strict and narrow a limitation of the intention of the parties as expressed, to hold that an agreement to submit to courts of foreign jurisdiction should not be treated as a submission to arbitration within the purview of the Arbitration Law. If such was not the result aimed at, it was idle to insert such a provision. But it could not have been otherwise. The contract was made in Cuba and the action could very easily be tried in that jurisdiction in the event of a breach by either party without so specifically providing. Its very inclusion seems to me to indicate the desire of the parties to have

any dispute which might arise submitted exclusively to that jurisdiction. They contemplated something different from the ordinary procedure and bound themselves by contractual arrangement for that purpose. In any event, under the authorities here cited, the defendants would seem entitled to a stay.

Further light may be found in a concurring opinion in the case of *Meacham* v. *Jamestown, etc., R. R. Co.* (211 N. Y. 346, 352, 353) decided before the Arbitration Law went into effect, Judge CARDOZO writing: " When resort is had to the foreign tribunal for the purpose of determining whether certain things do or do not constitute a breach, the cause of action must in the nature of things be complete before jurisdiction is invoked, and cannot be postponed by the declaration that it shall not be deemed to have matured until after judgment has been rendered. This must be so whether the tribunal is a court or a board of arbitrators. Indeed, the considerations adverse to the validity of the contract are more potent in the latter circumstances, for in the one case we yield to regular and duly organized agencies of the State and in the other to informal and in a sense irregular tribunals. (*Mittenthal* v. *Mascagni*, 183 Mass. 19, 23.) * * * There may conceivably be exceptional circumstances where resort to the courts of another state is so obviously convenient and reasonable as to justify our own courts in yielding to the agreement of the parties and declining jurisdiction. (*Mittenthal* v. *Mascagni, supra.*) If any exceptions to the general rule are to be admitted, we ought not to extend them to a contract where the exclusive jurisdiction has been bestowed, not on the regular courts of another sovereignty, but on private arbitrators." These views are pertinent here as demonstrating that even before the Arbitration Law became effective, there was high authority for the view that an exception might be made in favor of arbitration agreements where the tribunal of arbitration was to be a foreign court as distinguished from individual arbitrators. That language becomes more applicable at this day when considered in the light of the present statute. I, therefore, feel, particularly in view of the present tendency of the courts to hold parties strictly to their solemn undertakings and not to permit them to escape liability by resort to technical interpretation, that this agreement should be construed to be an agreement to arbitrate, and to call for the application of section 5 of the Arbitration Law. I can find nothing objectionable in reaching this conclusion so far as public policy is concerned, and am convinced that the court should decline jurisdiction and stay proceedings until the plaintiff determines to abide by its obligation. Accordingly the motion for a stay is granted.