JACQUES GILBERT, Plaintiff, *v.* HENRY C. BURNSTINE and Another, Individually and as Copartners Trading under the Name of BURNSTINE & GEIST, Defendants.*

Supreme Court, New York County, November 8, 1929.

* Affd., 229 App. Div. 170.

*Guggenheimer, Untermeyer & Marshall* [*Leonard Acker* of counsel], for the plaintiff.

*Burnstine & Geist* [*Henry C. Burnstine* of counsel], for the defendants.

TOWNLEY, J. Plaintiff moves for judgment on the pleadings under rule 112 of the Rules of Civil Practice, and defendants by counter motion move for judgment on the pleadings in their favor and to strike out as sham part of plaintiff's reply. The pleadings before the court are the amended complaint, answer and reply served by direction of the court. Plaintiff instituted an arbitration proceeding in London, England, in which the defendants failed to appear pursuant to process and notices served in New York. The arbitration proceeded in their absence and resulted in a money award in favor of plaintiff. Plaintiff in this action seeks to recover against defendants a money judgment upon the award.

On June 25, 1925, the plaintiff and defendants made and entered into a written agreement for the purchase and sale of a quantity of zinc concentrates, in which agreement it was provided that all differences arising under said agreement should be arbitrated at London, pursuant to the provisions of the Arbitration Law of Great Britain, and that the award thereunder should be binding on the defendants. Certain differences and disputes arose, and in June, 1926, the plaintiff caused to be served upon each of the defendants a notice requesting them to concur in the appointment of a sole arbitrator, and in said notice stated and advised the defendants that upon their failure so to concur the plaintiff intended to apply to the High Court of Justice of England for the appointment of a proper person to act as sole arbitrator, pursuant to the provisions of the English Arbitration Act of 1889 (52 & 53 Vict. chap. 49). Defendants failed to concur as requested in said notice, and thereupon the plaintiff, without further notice to the defendants, issued an originating summons against the defendants, under an order which plaintiff obtained from the King's Bench Division of the High Court of Justice of England, and caused the same to be served upon each of the defendants.

Thereafter a master in chambers of the King's Bench Division named a sole arbitrator, who issued a notice of hearing to be held in London on a stated day, and this notice was served on each of the defendants. Neither of the defendants nor any person on their behalf having appeared at the time and place so fixed for the hearing, the sole arbitrator at London issued a so-called peremptory notice, directed both to the plaintiff and to the defendants, notifying them to be present on December 13, 1926, at eleven o'clock in the forenoon, at No. 50 Gresham street, London, England, and then and there

to be present and furnish the arbitrator with all relevant documents relating to the matters in question, and this second notice so issued by the said arbitrator was also served on each of the defendants. The defendants failed to appear upon the arbitration proceeding. The arbitrator, nevertheless, proceeded, and thereafter made and published an award in favor of the plaintiff and against the defendants for an amount in pounds sterling. Notice of the making of such award was thereafter served upon the defendants; payment thereof was demanded and refused.

The answer sets up denials in effect controverting all the material allegations of the amended complaint, except that the award had not been paid, and the value of the pound sterling, together with eight separate defenses. The plaintiff's motion for judgment must be denied, because the answer denies essential facts pleaded in the amended complaint, and thus raises issues of fact for trial. In plaintiff's reply, served by order of the court, it is expressly admitted that the sale agreement was made in New York city (paragraph 2 of reply); that at all the times mentioned in the amended complaint and in the said agreement each of the defendants was and is a citizen of the United States of America (paragraph 1 of reply), and were citizens and residents of the United States (paragraph 18 of reply); that neither of the defendants appeared in the arbitrarion proceedings, or in any proceeding in which the award was obtained, and that no one appeared in behalf of either defendant in any said proceeding (paragraph 7 of reply).

Plaintiff in his reply does not deny, and accordingly is held to admit, the following allegations contained in the defendants' answer: " That the various notices, papers and originating summons alleged in the amended complaint to have been served on defendants were left with them in the city and state of New York " (paragraph 14 of answer). " That neither of the defendants ever made any submission to arbitration of any differences existing between plaintiff and themselves under said contract " (paragraph 11 of answer). Upon the motion by defendants for judgment upon the pleadings, the truth of the plaintiff's allegations must be presumed, except as they are affected by admissions in the reply.

The reply admits, or is deemed to admit, that the defendants were and are citizens and residents of the United States and of the State of New York, and that the originating summons and all the notices referred to in the amended complaint were served upon the defendants, not within the territorial limits of Great Britain or any of its dominions, but in the city and State of New York. Service of such papers in the city and State of New York cannot be recognized as a sufficient personal service to confer jurisdiction in the arbitration proceeding to make an award *in personam* against the defend-

ants, and such an award will not be enforced in our courts. It is a fundamental principle of our jurisprudence that, to authorize the enforcement in this State of a money judgment rendered in a foreign jurisdiction *in personam* against non-residents, it must appear that such judgment was based upon personal service of process within the territorial limits of the foreign jurisdiction or upon voluntary appearance there. That principle applies with equal, if not greater, force to awards made by foreign arbitration tribunals. The decision in the case of *Skandinaviska Granit Aktiebolaget* v. *Weiss* (226 App. Div. 56), recently rendered by the Appellate Division, Second Department, is well founded in reason, and fully supported by the authorities therein cited, and will be followed. The chief difference between that case and this is that there the arbitration agreement did not specifically provide, as here, that the differences arising should be arbitrated pursuant to the provisions of the Arbitration Law of a specified foreign country, and that action was brought upon the foreign judgment entered upon the award, and not upon the award itself, as is this action.

Plaintiff contends that by the specific provision of this arbitration agreement defendants had consented in advance to proceed with the arbitration in Great Britain, pursuant to the provisions of the Arbitration Law of that country, and thus bound themselves to abide by any award there made and obtained in accordance with the procedure in arbitration provided by the Arbitration Act of 1889, including its prescribed methods for service of process and notices. The contention must be overruled. At common law an arbitration agreement related only to existing controversies, and could be revoked, annulled or abrogated by the withdrawal of either party prior to the time of the rendering of the award. It has been held by the Court of Appeals, in decisions made prior to our Arbitration Law (Laws of 1920, chap. 275), that even an agreement in a submission to arbitration that it shall be irrevocable does not destroy its revocability; and this is so, although by the terms of the submission the party seeking to revoke, for a valuable and executed consideration, expressly abandoned the right to revoke. All such stipulations, like other executory agreements, if broken, simply leave the other party to seek redress by action for damages. (*People ex rel. Union Ins. Co.* v. *Nash*, 111 N. Y. 310; *Finucane Co.* v. *Board of Education of City of Rochester*, 190 id. 76.)

Our Arbitration Law (Laws of 1920, chap. 275, as amd. by Laws of 1921, chap. 14) recognizes the validity of arbitration agreements as to future controversies arising between the parties thereto, and provides that arbitration provisions " shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract " (§ 2). It further

provides that the Supreme Court shall direct specific performance of arbitration agreements upon application duly made (§ 3). The statutory provision deprives parties to an arbitration agreement of their former common-law power to revoke the submission by withdrawal prior to the time of final submission to the arbitrators. The Appellate Division, First Department, however, expressly held (*Matter of Inter-Ocean Food Products, Inc.*, 206 App. Div. 426) that while an agreement to arbitrate in a foreign jurisdiction and before a foreign arbitrator is not invalid or illegal, it cannot be enforced as between citizens of this State who are the parties thereto by compelling them to go without the State in a foreign jurisdiction and before a foreign tribunal there to arbitrate their disputes.

The only remedy under such circumstances, it was held, is to stay the trial of an action here by the party who has refused to carry out his agreement to arbitrate should he seek the aid of our courts to enforce his claim therein. The provision of our Arbitration Law that agreements for arbitration are " valid, enforceable and irrevocable " seems to apply generally to all arbitration agreements, and thus to apply to an agreement to arbitrate in a foreign jurisdiction in accordance with the provisions of a foreign law. However, as held in the *Inter-Ocean Food Products, Inc.*, case, it will not be enforced by our courts by compelling the parties to go to a foreign jurisdiction. But that case expressly holds that such an agreement is not invalid or illegal, and suggests that some measure of relief in the nature of a stay against one of the parties may be accorded based upon a foreign arbitration agreement.

But the validity and irrevocability of the agreement do not establish that the parties are bound by process or notice emanating from a foreign court or tribunal served upon them without the territory of its jurisdiction and within the State of New York. The ruling in the case last cited, that courts will not compel parties to go without the State to arbitrate, seems to require that the parties go there for that purpose, to confer jurisdiction upon the foreign tribunal. In the absence of service of proper papers within the jurisdiction of the foreign arbitration tribunal, it never acquired jurisdiction over the persons of the defendants. The ruling in *Skandinaviska Granit Aktiebolaget* v. *Weiss* (226 App. Div. 56), above cited, directly holds that the foreign arbitration tribunal never acquired jurisdiction of the parties to make an award, where notice had been served upon the parties in New York, and none within the jurisdiction of the arbitration tribunal.

The more specific provision for arbitration, that it was to be had at London, pursuant to provisions of the Arbitration Law of Great Britain, set forth in the amended complaint here, as part of the agreement, does not have the effect of authorizing and validating the

service within the State of New York, under direction of the foreign tribunal, of notices of the arbitration proceeding, and does not make such service effective and binding upon the parties. The parties should not be held liable for an award made there, upon their failure and refusal to go without the State to arbitrate, upon receipt in New York of such papers. The attempted service of papers in New York in the British arbitration proceeding was entirely beyond the jurisdiction of the tribunals from which they emanated, and was consequently abortive and ineffective, when the defendants did not appear to vest the arbitrator with power to make an award which will be enforced by our courts.

The suggestion of plaintiff that defendants in the eighth separate defense assert the validity of the British judgment, entered upon the arbitration award, which is the basis of this action, and, therefore, are bound by the judgment, is without foundation. That judgment is not pleaded in the amended complaint, which proceeds solely upon the basis of the award itself, and the defendants in said defense allege merely the recovery of what purported to be a judgment, and set up a merger of the award therein. They do not assert the existence of a valid judgment. Defendants may plead inconsistent defenses. Election of remedies applies to causes of action, not to defenses. One defense may set up a judgment as valid, and another may assert that it is null and void.

Regarding the defendants' counter notice of motion to strike out as sham certain allegations contained in the plaintiff's reply: Whether the defendants were citizens and residents of, and domiciled in, the State of New York, is not vital, decisive or material on this motion for judgment. They were citizens of the United States residing in the United States and service of process and notices of our English tribunals upon them in the city of New York will not be regarded by our courts as sufficient to confer jurisdiction *in personam* upon English courts or English arbitration tribunals.

The defendants, however, are entitled to a disposition of their motion to strike out as sham. It is to be noted that, under section 538 of the former Code of Civil Procedure, the word " sham " was not used, except in connection with the entire answer, or an entire defense contained therein. Rule 103 of the Rules of Civil Practice has broadened its application to a part only. The determination of whether a pleading is frivolous, but not whether it is sham, must be made from a mere inspection of the pleading itself, unaided by argument of affidavits. On the other hand, the question whether a pleading is sham — that is to say, false in fact, though good in form — casts upon the moving party the burden of establishing the essential element of falsity, and to that end affidavits have always been received and considered.

As to one's knowledge or information it is axiomatic that he who has at his disposal the means of knowing is held to know; that he who shuts his eyes, when to open them and look is to see, is held to see; that what one knows and what one ought to know is regarded in law as equivalent. The facts stated in defendants' moving papers upon this application to strike out as sham demonstrate to my satisfaction that the denial referred to was contrary to the fact and false.

The motion to strike out is granted, without costs, and so much of paragraph 1 of the plaintiff's reply as denies any knowledge or information sufficient to form a belief as to that part of paragraph 7 of the defendants' answer which alleged that " each of the defendants was and still is a citizen   *   *   *   of the state of New York and a resident of and domiciled in the state of New York " is stricken out as sham, and the said reply will be deemed amended accordingly. Plaintiff's motion for judgment is denied. Defendants' motion for judgment is granted, with ten dollars costs, and judgment is directed in favor of the defendants, dismissing the complaint upon the merits, together with the costs of action. Defendants' motion to strike out part of the reply as sham is granted in respect to the specific allegation above specified, without costs.

Plaintiff shall have a stay of execution for twenty days after the service of a copy of the judgment, with notice of entry. The clerk is directed to enter judgment accordingly. Orders signed.