## Katakura & Co., Ltd., v. Vogue Silk Hosiery Company.

*Dickson, Beitler & McCouch,* for plaintiff.

*George J. Edwards, Jr.,* for defendant.

TAULANE, J., May 25, 1931.—The plaintiff has presented its petition, alleging, in substance, as follows:

That plaintiff is a corporation organized under the laws of the Kingdom of Japan and maintains an office for the transaction of business in New York City;

That defendant is a corporation organized under the laws of the State of Pennsylvania with its principal office in the City of Philadelphia;

That the plaintiff and defendant entered into a certain agreement in writing whereby the plaintiff agreed to sell and the defendant agreed to purchase certain merchandise known as Japan filature at the price and upon the terms and conditions in said agreement set forth, and among said conditions are the following:

"All the terms and provisions of the Raw Silk Rules of the Silk Association of America, approved or adopted by its Board of Managers are expressly understood and agreed to be a part of this contract the same as if they were herein set forth in full.

"Every dispute, of whatever character, arising out of this contract must be settled by arbitration to be conducted in the manner provided by the by-laws, rules and regulations of said Association, governing arbitration;"

That pursuant to said agreement the plaintiff delivered to the defendant part of the merchandise therein described, which merchandise the defendant received and paid for, but thereafter the defendant refused to receive and pay for the balance of said merchandise, whereby a controversy has arisen and now exists between the plaintiff and the defendant under said agreement;

That the plaintiff has requested the defendant to join with it in referring the controversies and disputes between them under said agreement to arbitration in accordance with the by-laws, rules and regulations of the Silk Association of America, Inc., as provided in their said agreement, and also in accordance with the laws of Pennsylvania, but the defendant has refused and still refuses to submit the matter in controversy to arbitration in accordance with said agreement.

Plaintiff prayed for a rule on the defendant to show cause why the defendant should not be compelled to submit to arbitration the matters in dispute between them in the manner provided in their agreement and for such further relief as might be fit and proper in the premises.

The court granted the rule to show cause prayed for by the plaintiff, but the defendant, instead of answering the petition, filed a motion attacking the jurisdiction of the court to grant relief either under the Arbitration Act of April 25, 1927, P. L. 381, or by compelling the defendant to join in arbitration before the Silk Association of America, Inc., in New York.

An examination of the raw silk rules of the Silk Association of America, Inc., and the rules and regulations governing the conduct of arbitrations by said silk association satisfies us that they contemplate the holding of the arbitration proceedings in New York City under and subject to the laws of the State of New York regulating arbitration. If this be so, it is quite clear that the arbitration provided for in the agreement between the plaintiff and the defendant could not be conducted under or subject to our Arbitration Act of 1927, because that act necessarily only regulates and controls the procedure in arbitration conducted in Pennsylvania.

How could this court issue any order which would bind or control the parties or the arbitrators in an arbitration proceeding conducted in New York under the laws of New York. The powers of this court over arbitration are limited to proceedings instituted or conducted within our territorial jurisdiction.

While the question we are discussing seems to us free of doubt, yet a somewhat similar question arose in the case of The Silverbrook, 18 F. (2d) 144, 147, where the court refused to entertain a petition under the Federal Arbi-

tration Act of February 12, 1925, 43 Stat. at L. 883, where the contract provided for arbitration in London. The court said:

"This court cannot direct and otherwise supervise and conclude an arbitration to be held in London, or assume to vacate, modify, or correct any award that might be made there, or, indeed, anywhere, except within this district."

If the object of the plaintiff's petition be to compel the defendant to join in arbitration under our Arbitration Act of 1927, we agree with the defendant that we are without authority to compel it to do so, and the plaintiff's petition should be dismissed for want of jurisdiction.

The prayer of the plaintiff's petition, as we view it, is to compel the defendant to arbitrate before the Silk Association of America, Inc., as the defendant agreed to do in its agreement with the plaintiff. As the defendant entered into the agreement freely and voluntarily, without fraud or coercion, the defendant has not alleged or suggested any satisfactory or convincing reason why it should not be obliged to fulfill its agreement.

For reasons which are not persuasive today, the courts in the past turned their faces against arbitration agreements and refused to enforce them at law or specifically enforce them in equity. The reasons of policy for such an attitude are best expressed by Story, J., in his classical opinion of Tobey *v.* The County of Bristol, 3 Story, 800.

Whatever may have been the policy of the courts in the past, Pennsylvania has now adopted the Uniform Arbitration Act of April 25, 1927, P. L. 381, which is today the law of most of the states.

Section one of said act provides:

"A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

An agreement to arbitrate is now "valid, irrevocable and enforceable." This is a clear and unequivocal declaration of the policy of this state as to the validity of arbitration agreements. This declaration is complete in itself and independent of the other provisions of the act regulating matters of procedure. The defendant's agreement to arbitrate is, therefore, valid, irrevocable and enforceable.

We have pointed out that the defendant's agreement cannot be enforced in Pennsylvania, and if it cannot be enforced in New York, it cannot be enforced anywhere because the agreement limits arbitration in New York before the Silk Association of America, Inc.

The situation which confronts the parties in this case as to jurisdiction is a very common one and will be of frequent occurrence where arbitration agreements are entered into between parties, and particularly corporations, of different states.

It is the present policy of our courts to encourage and enforce arbitration agreements: Bashford *v.* West Miami Land Co., 295 Pa. 560; Red Cross Line *v.* Atlantic Fruit Co., 264 U. S. 109; Berkovitz *v.* Arbib, 230 N. Y. 261.

We see no reason why the defendant, in accordance with its agreement, should not be compelled to go to New York and join with the plaintiff in arbitration of their differences before the Silk Association of America, Inc. This court has jurisdiction of the parties and jurisdiction of the subject matter,

and we have full authority to enter such a decree. Such a decree amounts to no more than a decree for specific performance, and is in no way distinguishable from the ordinary proceeding for specific performance, except that the defendant is ordered to go without the jurisdiction to perform his contract.

Since the celebrated case of Penn *v.* Lord Baltimore, 1 Ves. Sr. 444, courts of equity have assumed jurisdiction to compel parties within their jurisdiction to do acts affecting lands and other property without the jurisdiction of the court, and it is a slight extension of that principle to compel the defendant to go without the state if it is necessary to do justice between the parties. This view of the powers of a court of equity is recognized in the recent restatement of the law of conflict of laws by the American Institute (March 10, 1930, page 138, § 101), where it is stated:

"A state can exercise through its courts jurisdiction to order a person subject to its jurisdiction to institute proceedings in a court or other governmental agency in another state, or to defend or appear in such proceedings."

Similar views are expressed in 24 Columbia Law Review, 204, and in 14 Minnesota Law Review, 494, 529, it is said:

"Where the relief sought calls for the doing of some act in another state, where the court has personal jurisdiction over the parties, it is not a question of jurisdiction at all, but is merely a question of expediency as to whether or not in the particular case the court will exercise the power which is discretionary in all courts of equity."

See Goodrich on Conflict of Laws, 151-156, where the subject is discussed and the authorities cited. See, also, 26 Harvard Law Review, 283, and 35 Harvard Law Review, 610.

It is no answer to our conclusion to say that our courts have no power to direct or control arbitration in New York. In ordering the defendant to appear in the New York arbitration proceedings, we are doing nothing more than directing the defendant to appear and submit itself to the jurisdiction of the New York proceeding. When the defendant has done this, the object of our order will have been accomplished. It is immaterial whether the defendant further participates in the arbitration or not.

Neither this court nor the plaintiff will be in any way interested whether the defendant, after submitting itself to jurisdiction in New York, proceeds further in the arbitration. Once the defendant submits itself to jurisdiction in New York, any order or judgment thereafter entered against it would be binding on the defendant in Pennsylvania. The only purpose of compelling the defendant to appear and submit itself to arbitration in New York is to enable the plaintiff to proceed with the arbitration in a manner that will be binding on the defendant. If we cannot compel the defendant to submit itself to the jurisdiction of the New York arbitration tribunal, the plaintiff cannot enforce the defendant's agreement to arbitrate.

It is true that the Appellate Division of the Supreme Court of New York in Re Inter-Ocean Food Products, Inc., 206 App. Div. 426, refused to order a citizen of New York to go into a foreign jurisdiction to arbitrate in accordance with his agreement. The reasoning of the Appellate Division is unsatisfactory and unconvincing, and we thoroughly disagree with its conclusions. Our conclusion, therefore, is that we have jurisdiction to compel the defendant to appear before the Silk Association of America, Inc., to arbitrate in accordance with its agreement.

The defendant has suggested a number of constitutional objections to the enforcement of arbitration statutes, but the answers to most of them are so

obvious that we need not discuss them: Berkovitz v. Arbib, 230 N. Y. 261; Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109.

There is, however, a constitutional objection raised to our Arbitration Act of 1927 which we should notice. It will be observed that the act excludes "a contract for personal services." We are quite clear that this exception does not render the act unconstitutional. It is a little late to question the validity of classification of legislation based on labor or personal services.

In International Harvester Co. of America v. State of Missouri, 234 U. S. 199, the Missouri anti-trust acts were held constitutional which applied only to combinations of manufacturers and vendors and exempted associations of wage earners from the prohibitions against combinations to lessen competition and regulate prices. The court said:

"Whether the Missouri statute should have set its condemnation or restraints generally, prohibiting combined action for any purpose and to everybody, or confined it as the statute does to manufacturers and vendors of articles, and permitting it to purchasers of such articles; prohibiting it to sellers of commodities and permitting it to sellers of services, was a matter of legislative judgment and we cannot say that the distinctions made are palpably arbitrary, which we have seen is the condition of judicial review. It is to be remembered that the question presented is of the power of the legislature, not the policy of the exercise of the power. To be able to find fault, therefore, with such policy, is not to establish the invalidity of the law based upon it."

The arbitration statute of California was attacked in Pacific Indemnity Co. v. Insurance Co. of North America, 25 F. (2d) 930, because it excluded from its operation contracts pertaining to labor. It was held the classification was proper and the act constitutional. The court said:

"Laws granting special privileges to wage-earners or exempting them from burdens imposed upon others are of frequent occurrence and have been very generally sustained. Thus an involuntary petition in bankruptcy may not be filed against a wage-earner; he is often preferred in a 'measure in the distribution of the assets of an insolvent; he is given a lien for his wages; he is granted exemptions appropriate to his calling; his freedom of contract is sometimes limited, as by laws regulating the hours of service or by laws requiring wages to be paid at stated periods, or only in lawful money of the United States. Classification is as much a rule as an exception, and the courts may not interfere, unless they are able to say that the classification adopted by the Legislature is arbitrary and without any reasonable basis."

We wish to call attention to the case of Gilbert v. Burnstine, 255 N. Y. 348, where a complaint alleged that plaintiff and defendants entered into a contract whereby they agreed to arbitrate all differences arising thereunder at London pursuant to the arbitration laws of Great Britain; that differences having arisen, the plaintiff at London served notice upon defendants in New York to agree on the nomination of an arbitrator; that on defendants' failure to comply, proceedings were taken before an English court, notice having previously been served upon defendants in New York, resulting in the employment of an arbitrator, who, after further notice to defendants, proceeded with the arbitration, resulting in an award against defendants, and further alleging that all the proceedings were duly had in accordance with the English arbitration act. It was held that the complaint stated a good cause of action. The decision of the court was based on the ground that the defendants, in agreeing to arbitration in London, had consented in advance to the jurisdiction of the English courts.

The court likened the proceeding to the case where one signs a judgment note and therein authorizes an attorney anywhere to confess judgment against him. (See 31 Columbia Law Review, 679; 79 University of Pennsylvania Law Review, 478).

Under the Burnstine case, the plaintiff here could institute arbitration proceedings against the defendant in New York, with notice, but in its absence, and in the event of an award the plaintiff could institute an action in this state on the award against the defendant which would be conclusive if the proceedings were regular.

We agree with the Court of Appeals, but there is no decision on the point by our Supreme Court or by the Supreme Court of the United States.

The arbitration statute of New York is quite similar in its provisions to our Act of 1927; a copy of the New York statute is contained in the copy of the arbitration manual of the Silk Association of America attached to plaintiff's petition.

And now, to wit, May 25, 1931, the defendant's preliminary objections to the jurisdiction of the court and the subject matter are overruled, and the defendant is ordered to file an answer to plaintiff's petition within fifteen days.