PARSONS & WHITTEMORE, INC., Appellant, *v.* REDERIAKTIEBOLAGET NORDSTJERNAN, Respondent.

First Department, November 7, 1955.

*Meyer Grouf* of counsel (*Harold Manheim* and *Robert Braunschweig* with him on the brief; *Wachtell, Manheim & Grouf,* attorneys), for appellant.

*Elmer C. Maddy* of counsel (*Kirlin, Campbell & Keating,* attorneys), for respondent.

BERGAN, J. Plaintiff is a New York corporation which buys wood pulp on the Pacific coast for export and sale to customers outside the United States. Defendant is a Swedish corporation. It maintains a steamship line and acts as a common carrier between the Pacific coast and European ports. It is a member of the Pacific Coast European Conference.

In 1951, plaintiff signed an agreement with the steamship lines constituting the conference, agreeing to give those lines its exclusive patronage in shipping between the West coast and Europe; and the lines represented by the conference, in turn, agreed to give to the plaintiff as shipper lower rates than available to nonsubscribers.

It is conceded that this was a rate agreement and not a space agreement. The instrument provided that " Space agreements may be entered into as hereinafter provided with the carriers party hereto." The agreement contained an arbitration clause: " In case of dispute the shipper and carrier(s) each agree to submit the matter under dispute to arbitration, each appointing an arbitrator and the two so chosen shall select an umpire." It further provided that the arbitration " shall be made under and pursuant to " the United States Arbitration Act.

On November 8, 1954, plaintiff offered to the defendant two shipments of wood pulp for carriage from Everett, Washington, to London, England; but defendant required under circumstances in dispute that plaintiff sign an agreement to pay a rate in excess of those provided in the general rate agreement. Instead of $16,506 which would be due under the rate agreement, plaintiff paid $19,149.54 for carriage of the two shipments.

Plaintiff in January, 1955, instituted in the Municipal Court, an action to recover $2,643.54, the difference between these rates. Defendant applied to the Municipal Court for a stay of

the action " until arbitration of the disputes between the parties has been had in accordance with the terms of the contract between the parties " pursuant to section 1451 of the Civil Practice Act.

The stay was denied by the Municipal Court, and on appeal to the Appellate Term the order was reversed by a divided court and the stay granted. The appeal by the plaintiff is here by permission of the Appellate Term.

Plaintiff argues that the arbitration clause in the rate agreement is invalid under the terms of the United States Arbitration Act (U. S. Code, tit. 9, § 2) and hence it is not to be treated as a binding agreement to arbitrate in any sense, and not enforcible under New York law.

Whether the courts of the United States would or would not enforce arbitration under the Federal act in the conditions shown by this agreement is a question we need not answer definitively. We have before us a contract which on its face purports to relate to a " maritime " transaction and to " commerce " which are both of the two alternative subject matters required to be evidenced by contracts falling within the scope of the United States Arbitration Act.

With such a contract before us, we would as a matter of course stay the action at law until the right to arbitration had been tested in an appropriate and direct proceeding. Even as to a foreign arbitration agreement, the New York court will stay an action on the subject matter falling within the apparent terms of the agreement although it would not act affirmatively to compel the parties to proceed to arbitrate in the foreign jurisdiction. (*Matter of Inter-Ocean Food Products,* 206 App. Div. 426.)

We certainly would not withhold the stay until the right to arbitrate had been tested and had failed. By staying the action, we are not with finality enforcing the arbitration agreement; we are merely preserving the status of the parties until appropriate remedies may be pursued. The policy of preservation of status by a stay in a case involving diverse jurisdictions was recognized by this court in the *Inter-Ocean* case. Our relationship to a controversy which may be arbitrable under the Federal law is somewhat closer and our duty to assist the process more imperative than the aid we might lend to a foreign arbitration.

In further support of the stay of the action at law, the contract may well be deemed adequate to provide for an enforcible arbitration under New York law even though under the United States Arbitration Act the Federal court might withhold its

compulsion for one or more of the several reasons urged by the appellants as grounds bringing the agreement outside the scope of that act.

To begin with, the agreement to arbitrate is not itself unlawful under Federal law merely because it does not come within the scope of a Federal statute authorizing enforcement. The arbitrament is not forbidden because it might make use of the Federal machinery of implementation. Before the enactment in 1925 of the United States Arbitration Act providing for enforcement of such agreements, it had been noted that they were not then, however, treated as unlawful (*Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109), and it can scarcely be thought that if the implement of the present statute fails to reach them they are now unlawful.

This, indeed, was the view taken at common law. (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284, 293.)

Therefore, if the United States courts refuse to lend machinery for the enforcement of that part of the agreement to arbitrate which provides that the arbitration " shall be made " under the terms of the United States Arbitration Act, it is not as clear as appellant here asserts that the necessary machinery will be withheld in New York; for the arbitration clause may be quite sufficient in its general provisions without reference to the Federal act to invoke the aid of the New York court, since it provides for the submission of disputes to arbitrators and fully provides the method of their selection; the selection of an umpire; and the binding effect of a decision of two or more of the arbitrators upon both the parties.

In *French* v. *Petrinovic* (184 Misc. 406), the Appellate Term held in an opinion by Mr. Justice Shientag that the New York statutory limitations did not apply to a common-law arbitration and that the State court might take jurisdiction of a controversy of the fee of an arbitrator even though the basic controversy he had heard were removable to the Federal court. Where a contract to be performed in Massachusetts left open where arbitration would be had the court in New York might under some circumstances assume jurisdiction. (*Matter of Marchant* v. *Mead-Morrison Mfg. Co., supra.*) The New York arbitration statute does not " bring the contract into being," it merely " adds a new implement * * * for its more effectual enforcement." (Cardozo, J., p. 293.)

The possibility of using New York processes to enforce the arbitration need not be considered, however, until the United States courts refuse to take jurisdiction. Appellant's argument

is that the Federal courts will not take jurisdiction because the rate agreement is not a " maritime contract " or a contract involving " commerce ".

But the agreement provided for exclusive use by the shipper of the maritime shipping facilities of the group of steamships; and provided also for the rate to be charged. The action which plaintiff instituted in the Municipal Court was based on a breach of this contract for an overcharge on two actual maritime shipments. The contract in which plaintiff sued was the same contract (the rate agreement) which contained the arbitration clause; and it can scarcely be doubted that an action to recover an overpayment actually made in actual shipments across the ocean prima facie is based on either a " maritime transaction " or a " transaction involving commerce ".

It is said that the amount of money involved is insufficient to invoke the Federal jurisdiction; but here is a question that the Federal courts ought to decide and if the amount is too small to invoke the jurisdiction, consideration may then be given to facilities available in New York. On the argument that the rate agreement is not enforcible by arbitration unless there is reference to the space agreement which contains no arbitration clause, it must be noted that plaintiff regarded the agreement containing the arbitration clause as sufficiently enforcible to sue at law for its enforcement. To say that a controversy arising under it is actionable at law is to say also that the controversy is arbitrable.

The determination should be affirmed, with costs.

PECK, P. J., BREITEL, BASTOW and COX, JJ., concur.

Determination of the Appellate Term unanimously affirmed, with $20 costs and disbursements to the respondent.